**William G. BROOKS,**
**Plaintiff–Appellant,**

**v.**

**AMERICAN BROADCASTING COMPA-NIES, INC.; Geraldo Rivera; Charles C. Thompson; and Maravilla Productions Company, Inc., Defendants–Appellees.**

**No. 90–3369.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1991.

Decided May 3, 1991.

---

David L. Jamison, John L. Wolfe (argued), Akron, Ohio, for plaintiff-appellant.

Carolyn K. Seymour, Terence J. Clark (argued), Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants-appellees.

Before RYAN and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Plaintiff William G. Brooks appeals from the district court's denial of his motion to amend his complaint to include allegations that 1) American Broadcasting Companies, Inc. (ABC) and other defendants violated 18 U.S.C. § 2511, which prohibits electronic interception of certain conversations, and 2) ABC and other defendants violated 42 U.S.C. §§ 1981, 1985, which prohibit certain forms of racial discrimination. The district court denied the motion to amend on the grounds that the new allegations could not survive a motion to dismiss for failure to state a claim. Brooks also appeals the district court's grant of summary judgment for ABC and other defendants with respect to his state-law action for libel.

We are presented with two issues. The first is whether taking as true the well-pleaded allegations of his motion to amend, Brooks states a cause of action for violation of his rights under 18 U.S.C. § 2511 or 42 U.S.C. §§ 1981, 1985. The second is whether genuine issues of material fact remain concerning ABC's and the other defendants' alleged libeling of Brooks.

We conclude that Brooks fails to state a cause of action for violation of the federal statutes. We also conclude that under the analysis the district court employed in entering summary judgment, genuine issues of material fact remain with respect to defendants' alleged libel.

## I. Background

ABC television personality Geraldo Rivera traveled to Akron, Ohio, to investigate rumors that a local judge persuaded women to have sex with him by offering the women favorable rulings in certain cases. Rivera suspected that Brooks, an Akron resident with a substantial and slightly publicized criminal background, was assisting the judge by attempting to frighten the women out of testifying against him. Rivera persuaded Brooks to meet Rivera at a hotel. As soon as Brooks got out of his taxi, Rivera emerged from the hotel and rapidly asked Brooks a series of questions concerning Brooks's suspected role as "hitman" for the judge.

After this questioning, during which Brooks may not have known that ABC was recording his answers, Rivera summoned a camera crew from a nearby van. Muttering some obscenities, Brooks fled, with Rivera and camera crew in close pursuit. On a 1980 episode of ABC's television program "20/20," the network broadcast Rivera's and other persons' negative comments concerning Brooks and his alleged involvement with the judge. The remarks were to the effect that the judge employed Brooks as a "hitman," that five witnesses attested to

his role, and that Brooks was a "pimp," "betrayed" by the judge, a "muscleman," and a "street knowledgeable jive turkey." Before the broadcast of the "20/20" segment, a grand jury indicted Brooks on charges related to obstruction of justice.

Over the years, police had taken Brooks into custody 20 times on suspicion of various misdeeds. Brooks's criminal history included convictions for 1) breaking and entering, 2) grand larceny, 3) first-degree manslaughter, and 4) carrying a concealed weapon under disability. Adverse publicity had compromised Brooks's reputation severely prior to the "20/20" broadcast. The *Akron Beacon Journal* publicized Brooks's convictions in four articles. In addition to reporting the convictions, the *Beacon Journal* also had noted Brooks's "involvement" in a 1979 Akron slaying. Ten days before the "20/20" broadcast, the newspaper reported Brooks's indictment for intimidation of witnesses and obstruction of justice in relation to the judge, and referred to Brooks as "the man police suspect of being the so-called 'hit-man' in the sex case involving [the judge]...." According to Brooks, potential employers had become wary of hiring him as a result of his prior convictions.

In 1981, Brooks filed a complaint in the United States District Court invoking diversity jurisdiction and alleging that ABC and others libeled him by broadcasting Rivera's derogatory and allegedly false remarks. Brooks sought $20 million in compensatory and $20 million in punitive damages. Brooks next filed a motion to amend his complaint and alleged that ABC and others violated 18 U.S.C. § 2511 by using electronic, mechanical, or similar devices to unlawfully intercept his statements to Rivera and by broadcasting the statements at a later date. Brooks also alleged that defendants violated 42 U.S.C. §§ 1981, 1985 by conspiring to deprive him of his constitutional right to privacy inasmuch as he and the women with whom the judge allegedly had sex were black and the judge was white. Brooks continued to seek $40 million in damages, as well as attorneys' fees.

Defendants then filed a motion for summary judgment. The district court denied Brooks's motion to amend and also granted summary judgment for ABC and the defendants with respect to the claims in the original complaint, 737 F.Supp. 431. Brooks appeals from the summary judgment and from the denial of his motion to amend.

## II. Federal Claims

### A. *Standard of Review*

We have previously set forth the standards governing dismissal of a civil rights action under Fed.R.Civ.P. 12(b)(6), for failure to state a claim:

> Dismissals of complaints under the civil rights statutes are scrutinized with special care. A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) simply requires 'a short and plain statement of the claim showing that the pleader is entitled to relief....' Fed.R. Civ.P. 8(1)(2). All a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' [citation omitted]. A motion to dismiss under Rule 12(b)(6) should not be granted 'unless *it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*'

*Jones v. Duncan,* 840 F.2d 359, 361 (6th Cir.1988) (citations omitted) (emphasis in original).

### B. *Section 1981 and Section 1985 Claims*

In his complaint, Brooks alleges that the defendants conspired to violate sections 1981 and 1985 by using photographs of Brooks and tape recordings of his voice "only for the reason that [Brooks] was a black male alleged to be the friend and associate of a white male judge, who had had sexual relations with black women." Brooks alleges that these actions violated his "constitutional right of privacy." *Beyond these broad statements, Brooks's pleadings did not clarify his legal basis*

*for proceeding.* While Brooks's motion to amend alleged that ABC acted under color of state law, Brooks has since retreated from that position.

### 1. Section 1981

■ Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Brooks argues that the broadcast violated section 1981 because the adverse publicity interfered with his right to a fair trial and because the broadcast labeled Brooks with a "badge of infamy." According to his brief, however, Brooks never stood trial but instead pleaded guilty to obstruction of justice "in exchange for a plea bargain that he would receive probation."

The district court denied Brooks's section 1981 claim on the grounds that 1) Brooks failed to allege state action, and 2) his allegations were fatally vague and conclusory in omitting any mention of the laws of which he allegedly was denied the full and equal benefit. While there exists some federal appellate authority for the proposition that clauses two and three of section 1981 contemplate state action, *e.g., Mahone v. Waddle,* 564 F.2d 1018, 1029–30 (3d Cir. 1977), we need not resolve that issue today. Especially in view of the fact that he never stood trial, Brooks's vague and conclusory allegations cannot survive a motion to dismiss, and the district court correctly denied the motion to amend.

### 2. Section 1985

Section 1985 provides:

**Obstructing justice; intimidating party, witness, or juror**

. . . .

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**Depriving persons of rights or privileges**

(3) If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy whether another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

Brooks in his reply brief alleges that by intercepting him, Rivera and the camera crew committed "a prima facie violation of 42 U.S.C. § 1985(2)(n)(3) [sic]." That is as

much explication of the section 1985 claim as is offered. Thus, even at this late date in the litigation, Brooks fails to state a basis for relief. Defendants cannot effectively answer the allegation because there is nothing specific to answer. The district court denied the claim on the basis that the claim could not withstand a motion to dismiss. The district court's grounds were that 1) Brooks failed to plead the conspiracy in detail and 2) Brooks failed to allege any violation of a federally protected right, as required under section 1985(3).

■ More generally and more simply, however, we conclude that the section 1985 claim fails on the same ground as the section 1981 claim: the allegations are too vague and conclusory to withstand a motion to dismiss. *See Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984); *see also Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971).

### C. Federal Wiretapping or Eavesdropping Claim

■■ As effective in 1981, section 2511 of Title 18 generally prohibited willfully intercepting, disclosing, or using wire or oral communications. "Oral communication" meant "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510 (1968). Section 2511 permitted interception where a person not acting under color of law was "a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act." The phrase "or for the purpose of committing any other injurious act" was not legally binding since the phrase is unconstitutionally

vague. *See Boddie v. ABC*, 881 F.2d 267, 270–72 (6th Cir.1989).

The district court concluded that even under the facts alleged, Brooks had failed to allege that ABC's interception was "for the purpose of committing any criminal or tortious act." Brooks disagrees. Specifically, he contends that ABC violated a now-repealed Ohio statute, O.R.C. § 2933.58.[1] Section 2933.58 provided:

(A) *Except* as provided in this section, or *as permitted under the laws of the United States*, no person shall willfully, surreptitiously, and by means of any device listen to, transmit, amplify, or record a private oral communication carried on in circumstances which reasonably indicate that the parties thereto desire it to be confined to them, and no person shall willfully disclose or willfully use or attempt to use any information, knowing or having reasonable cause to believe such information was obtained in violation of this section.

Whoever violates this section shall be fined not more than one thousand dollars or imprisoned not less than one nor more than three years, or both.

(B) This section does not apply to communications by or through a line, cable, or wire under the control of a telegraph or telephone company, or to communications in which at least one party thereto, in order to prevent a crime or bring an offender to justice, has consented in advance to such communications being listened to, transmitted, amplified, or recorded, or to communications carried on publicly or under circumstances in which the parties thereto might reasonably expect such communications to be listened to, transmitted, amplified, or recorded.

(Emphasis added.) This now-repealed section prohibited only conduct "not permitted under the laws of the United States." Since the only United States Code section arguably forbidding ABC's conduct was section 2511, the district court concluded that ABC had not violated O.R.C. § 2933.58

---

**1.** O.R.C. § 1.16 authorizes civil actions to recover damages for violations of Ohio criminal stat- utes.

and thus had not committed a tort that would trigger a violation of 18 U.S.C. § 2511:

> In essence, this statute defer[red] to federal law, yet Brooks wishes to use it to establish the legality or illegality of an interception under federal law. This is not logically sound because it results in circular reasoning; i.e., Title III [wa]s violated if § 2933.58 [wa]s violated but § 2933.58 [wa]s violated only if Title III [wa]s violated.

We agree. In part, section 2511 serves to outlaw surveillance undertaken to violate state law, while section 2933.58 apparently serves to outlaw actions also violating federal surveillance law.[2] Under these circumstances, plaintiff's claim of wrongdoing, while semantically interesting, lacks genuine substance, and the district court properly denied the claim.

### III. Libel Claim

#### A. Standard of Review

■ The district court granted summary judgment dismissing Brooks's state law libel claim. We review a district court's grant of summary judgment *de novo*. *Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable

to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Riebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The movant meets its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). At that point, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

#### B. "Libel Proof" Concept

In dismissing Brooks's libel claim, the district court agreed with the defendants that, as a matter of law, Brooks was "libel-proof," a rather loose-woven legal conception of the federal courts. At the federal appellate level, the "libel-proof" concept makes its home only in the Second Circuit, although the Eighth, Third, and Fifth Circuits have referred to the concept as if those circuits might apply it under the right circumstances.[3] *Ray v. United States Dept. of Justice*, 658 F.2d 608, 611 (8th Cir.1981); *Marcone v. Penthouse Int'l Magazine*, 754 F.2d 1072, 1078–79 (3d Cir. 1985); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1074 (5th Cir.1987). Restated in its most viable form, defendant's argument is as follows: due to his prior publicized criminal acts and due to other publicity concerning the "hitman" allegations, any additional damage to Brooks's reputation that might have occurred due to the "20/20" broadcast was de minimis as a matter of law.

In a critical case in the libel-proof doctrine's evolution, the Second Circuit held:

> "This doctrine measures the incremental reputational harm inflicted by the challenged statements beyond the harm imposed by the non-actionable remainder of the publication; if that 'incremental harm' is ... nominal or nonexistent, the statements are dismissed as not actionable." *Id.* at 1458 (quotation omitted).

---

**2.** By "permitted," the Ohio legislature might have meant "explicitly authorized," but finding no evidence of such intention in the case law, we apply the plain language of the statute.

**3.** Thus far the Ninth Circuit has adopted only the "incremental harm branch" of the libel-proof doctrine. *Masson v. New Yorker Magazine, Inc.*, 881 F.2d 1452, 1457 (9th Cir.1989).

"We consider as a matter of law that appellant is, for purposes of this case, libel-proof, i.e., so unlikely by virtue of his *life as a habitual criminal* to be able to recover anything other than nominal damages as to warrant dismissal of the case." *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639 (2d Cir.1975) (emphasis added). At the time of the appeal, Cardillo was serving a 21-year sentence for assorted federal felonies. *Id.* at 640. A subsequent Second Circuit opinion further defined the contours of the libel-proof concept:

> The libel-proof plaintiff doctrine is to be applied with caution, since few plaintiffs will have so bad a reputation that they are not entitled to obtain redress for defamatory statements, even if their damages cannot be quantified and they receive only nominal damages. But *in those instances where an allegedly libelous statement cannot realistically cause impairment of reputation because the person's reputation is already so low ..., even nominal damages are not to be awarded.* Instead, the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided.

*Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir.1986) (emphasis added). Criminal convictions are the well-worn path to achieving libel-proof status, but a specific reputation obtained through means such as newspaper and magazine articles also will suffice. *See id.* Courts even have admitted articles published as much as five to eight years before the fact, to show that a plaintiff is libel-proof. *Id.* at 304.

In contrast to the Second Circuit, the District of Columbia Circuit has rejected libel-proof notions: "Because we think it [libel-proof theory] a fundamentally bad idea, we are not prepared to assume that it is the law of the District of Columbia; nor is it part of federal constitutional law." *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1569 (D.C.Cir.1984) (Scalia, J.), *vacated on other grounds*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The *Liberty Lobby* court implied that in applying libel-proof doctrine, the federal courts were spinning loose-woven legal theory not firmly attached to the loom of state law. *Id.* at 1568–69.

In the only relevant appellate case in this circuit, we affirmed without opinion the district court's dismissal for failure to state a claim. *Ray v. Time Inc.*, 452 F.Supp. 618 (W.D.Tenn.1976) (Wellford, J.), *aff'd without opinion*, 582 F.2d 1280 (6th Cir.1978). Plaintiff James Earl Ray, the notorious assassin of Martin Luther King, Jr., brought action for libel against *Time* and others for publishing false information concerning Ray and his crimes. With respect to the allegedly false information that Ray was a narcotics addict and narcotics peddler as well as a robber, the district court concluded:

> The Court is persuaded, in the light of all the circumstances in this cause and in the public record involved in the other cases mentioned, that ... James Earl Ray is libel-proof, as that term was used in *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638, 639 (2d Cir.1975). ... Ray, as Cardillo, is a convicted habitual criminal and is unlikely to be able to recover damages to his reputation as to warrant dismissal of his libel claim in the light of First Amendment considerations attendant to publication of material dealing with his background and criminal activities. As in [another Second Circuit case], this Court agrees ... that all the circumstances indicate this action is frivolous.

*Id.* at 622.

Although we may question whether all aspects of the libel proof doctrine are sound policy, in this diversity action, our task is to anticipate how the Supreme Court of Ohio would rule if confronted with Brooks's claim. *See Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985). Unfortunately, to date the Ohio courts have not addressed the libel-proof concept.

In any event, regardless of whether the Supreme Court of Ohio would endorse some version of the libel-proof theory, we cannot affirm the district court's summary judgment on the basis of such a concept. In our view, genuine issues of material fact

remain as to whether defendants' statements could have done further damage to Brooks's already tarnished reputation. While prior to the broadcast, some Akron residents knew Brooks as an occasionally violent criminal, no popular nationwide television program or other publicity had portrayed Brooks as a "hitman" for a corrupt judge, a "pimp," a "muscleman," or a "street knowledgeable jive turkey." We leave it to a trier of fact to determine whether, and to what extent, the "20/20" episode damaged Brooks's reputation.

Accordingly, we remand this case to the district court for further proceedings. On remand, the district court may conclude that a trial is necessary to resolve the question of Brooks's libel-proofness. On the other hand, the district court may grant summary judgment for defendants on the basis of one or more of the several alternative grounds, not based upon the libel-proof concept, that defendants have advanced.

### IV.

For the foregoing reasons, the district court's denial of Brooks's motion to alter or amend his complaint is AFFIRMED. The district court's summary judgment with respect to the libel claim is VACATED, and this case is REMANDED to the district court for a trial on the libel claim or for summary judgment based upon a different ground.