**Vivian Hallmark MIDDLETON, Individually and as Next Friend of Christopher Neil Hallmark, Plaintiff–Appellant,**

v.

**REYNOLDS METALS COMPANY, Defendant–Appellee.**

No. 91–5696.

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 3, 1992.

Decided May 8, 1992.

Rehearing Denied May 29, 1992.*

Carl B. Boyd, Jr. (briefed), William I. Markwell, Henderson, Ky., for plaintiff-appellant.

Ronald G. Sheffer, Sheffer, Hoffman, Thomason, Morton, Henderson, Ky. (briefed), for defendant-appellee.

Before: KENNEDY and JONES, Circuit Judges; and PECK, Senior Circuit Judge.

* Judge Kennedy would grant the rehearing on the grounds stated in her dissent.

JOHN W. PECK, Senior Circuit Judge.

Plaintiff-appellant Vivian Middleton, the mother of minor Christopher Hallmark, appeals the district court's grant of summary judgment to defendant-appellee Reynolds Metals Company ["Reynolds"]. From the undisputed facts, the district court concluded that under the statutory and common law of Kentucky Christopher Hallmark was a trespasser on Reynolds's property. The court further concluded that Reynolds was not liable to Christopher Hallmark because according to Kentucky law the company neither set a trap, nor intentionally inflicted injury on the boy. We disagree with the district court's conclusions. For the reasons that follow we reverse the court's grant of summary judgment.

## I. FACTS

Near Christopher Hallmark's home in Henderson County, Kentucky a gravel road leads away from a public roadway, Mason Landing Road. Reynolds owns the gravel road and land on both sides of the road beginning approximately seventy-five feet away from Mason Landing Road. This parcel of Reynolds's property, called the Shriver property, contained a house, two barns, a pond and several fields. Reynolds rented the house to the family of one of Christopher Hallmark's friends until the autumn of 1988. Until that time Christopher Hallmark used the gravel road on Reynolds's property on many occasions in order to visit his friend at the house. No one lived at the house on April 24, 1989, however. On or about April 14, 1989 Christopher Hallmark's grandfather asked him to work in one of Reynolds's barns in which his grandfather stored tobacco. Christopher Hallmark had no permission to enter Reynolds's property on April 24, 1989, however.

A few days prior to April 24, 1989, Reynolds's property manager, David McKechnie, decided to install across the gravel road leading to the house a ¼-inch steel cable at a height of less than two feet. McKechnie caused the thin cable to be erected several hundred feet inside Reynolds's property line. In his deposition McKechnie conceded that he had the cable installed in order to prevent trespassing. He neither posted "No Trespassing" signs, nor did he place any warnings or markers on the thin steel cable.

On April 24, 1989 in broad daylight and at a speed of between thirty and forty miles per hour, Christopher Hallmark rode his "dirt bike" motorcycle down the gravel road toward the house on the Reynolds's property. Christopher Hallmark did not see the thin steel cable until it was too late to avoid hitting it. He suffered severe injuries as a result of his collision.

Christopher Hallmark's mother filed this personal injury action against Reynolds in state court in Kentucky. The case was removed to federal district court. The district court granted Reynolds's summary judgment motion. This appeal followed.

## II. DISCUSSION

We conduct de novo review of a grant of summary judgment. Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). In determining whether to affirm a grant of summary judgment, we use the same standards as the district court. Id. A grant of summary judgment should be sustained if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). As a threshold matter, we note that summary judgment is likely to be inappropriate in cases where the issues involve intent. See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Viewing the evidence in the light most favorable to Christopher Hallmark's mother, Vivian Middleton, even though her son was a trespasser, we conclude that there was a genuine issue of material fact concerning the breach of Reynolds's duty to Hallmark. Accordingly, we conclude that this case was not ripe for summary judgment.

Although the federal courts have entered into a "New Era in Summary Judgments"

in which the courts require plaintiffs to demonstrate that there exist for their cases more than a scintilla of evidence on which a jury could reasonably rely, we conclude that the evidence Vivian Middleton has produced satisfies the burden imposed by the courts of the "New Era." *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 *et seq.* (6th Cir.1989), *discussing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

We recognize that on the day he rode his dirt bike down the gravel road on Reynolds's property Christopher Hallmark was a trespasser, Ky.Rev.Stat.Ann. § 381.-231(1), and that under Kentucky law the duties owed by landowners to trespassers are quite limited. Ky.Rev.Stat.Ann. § 381.-232. That section provides: "(t)he owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted by the owner or someone acting for the owner."

Nevertheless, in *Kirschner v. Louisville Gas & Elec. Co.* the Supreme Court of Kentucky held that the phrase "intentionally inflicted" in section 381.232 means "inflicted by *willful, wanton* or *reckless* conduct." (emphasis in original) 743 S.W.2d 840, 842 (Ky.1988). In *Kirschner*, the plaintiff suffered his injuries when electricity arced from transmission lines and struck the plaintiff as he stood on a platform of an electrical transmission tower. In its four-to-two decision the Kentucky Supreme Court majority upheld the grant of a summary judgment motion because it found no evidence to indicate that Louisville Gas & Electric had done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow. 743 S.W.2d at 843.

In support of its conclusions the Court specifically noted that there was no evi-dence to indicate that the defendant knew of the presence of trespassers or that the company had concealed dangers connected with the tower. 743 S.W.2d at 845. In fact, the evidence demonstrated that the defendant had erected on the tower large, plainly visible warning signs which contained the words "DANGER HIGH VOLTAGE."

The circumstances of the case *sub judice* are materially different from the circumstances existing in *Kirschner*. In the instant case, during his deposition Reynolds's representative and property manager, McKechnie, admitted that he had ordered the ¼-inch steel cable erected across the gravel road to prevent trespassers from using the lane, but did not post any "No Trespassing" signs on the property. McKechnie stated that he caused the cable to be erected to prevent further damage to the property caused by vehicular traffic. McKechnie indicated that the cable was erected in a ditch approximately 18 inches off the ground. Moreover, he conceded that when installing cables, his employees normally affixed plastic jugs to them to serve as markers indicating their presence. But the evidence does not indicate that Reynolds's employees placed plastic jugs on the thin cable erected across the gravel road on the Shriver property.

In his deposition, Christopher Hallmark averred that while riding his dirt bike in broad daylight he could not see the bare cable until it was too late to avoid it. He further stated there were no jugs positioned on the thin cable as markers on the day he crashed into it.

It cannot be concluded as a matter of law that when viewed in their entirety the defendant's actions were not reckless. In *List v. Southern Ry. Co.*, 752 S.W.2d 791 (Ky.App.1988), a case decided under Ky. Rev.Stat.Ann. § 381.232, the court held that whether application of the emergency brakes on a train would have saved a life was a question of fact for the jury. 752 S.W.2d at 793. The court opined that on account of the failure to utilize the means at hand to save a life, a jury could find the defendants' conduct to have been within

the category of wanton or reckless conduct discussed by the court in *Kirschner.* *Id.* We similarly conclude that a jury could find that in erecting the thin steel cable over a ditch at a height of 18 inches without identifying markers, the defendant in the instant case acted wantonly or recklessly as proscribed by the court in *Kirschner.*

### III. CONCLUSION

We reach this conclusion having duly noted the admonition of the Kentucky Supreme Court in *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382 (Ky. 1985). The court admonished:

> The judicial decision regarding when to save the interpretive function for the court and when to delegate the interpretive function to the jury is crucial to the development of negligence law. The more judges take cases away from juries, the more the concepts of reasonable conduct, negligence and gross negligence become synonymous with the view of the judge or judges on that court. Likewise, the more the interpretive power is delegated to juries, the more these concepts become the aggregate of discrete findings by juries. By delegating interpretation to a jury the judiciary allows current considerations of equity and common sense to modify what might otherwise become anachronistic principles. The role of the jury in interpreting the evidence and finding the ultimate facts is an American tradition so fundamental as to merit constitutional recognition. The conscience of the community speaks through the verdict of the jury, not the judge's view of the evidence. It may well be that deciding when to take a case away from the jury is a matter of degree, a line drawn in sand, but this is all the more reason why the judiciary should be careful not to overstep the line. (citations omitted) 690 S.W.2d at 385.

Because we believe this case presents questions of fact which render it an improper vehicle for summary judgment, we REVERSE the district court's decision and REMAND the case for further proceedings consistent with this opinion.

KENNEDY, Circuit Judge, dissenting.

Because I believe there are no material issues of fact as to whether defendant's actions could be characterized as "intentionally inflicted" by defendant, I would affirm the summary judgment granted by the district court.

Under Kentucky law, the duties owed by landowners to trespassers are extremely limited. As the majority acknowledges, the governing statute provides that "[t]he owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted by the owner or someone acting for the owner." Ky.Rev.Stat.Ann. § 381.-232 (Baldwin 1989). The rule is the same under Kentucky common law. The Kentucky Supreme Court has stated that "intentionally inflicted" means resulting from willful, wanton or reckless conduct. *Kirschner v. Louisville Gas & Elec. Co.,* 743 S.W.2d 840 (Ky.1988). The *Kirschner* court held that conduct rises to this level only if "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Id.* at 843. Taking the facts and inferences in the light most favorable to plaintiff, she has not produced any evidence which would support a finding of an unreasonable act in disregard of an obvious risk of probable harm. The cable was installed to prevent automobiles from travelling down the road, in response to one such occurrence the previous summer. Sporadic pedestrian visits to a pond for fishing by local teenagers do not, without more, give rise to a finding of defendant's ignoring an obvious risk of probable harm resulting from a motorcycle being used in such a manner as to render adequate stopping distance impossible.

I would affirm the judgment of the District Court.