14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNIPROP, INC., Plaintiff-Appellant,
v.
DOLPHIN PARTNERS, INC., Defendant-Appellee.
 No. 92-2287.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1993.
 
 Before: MARTIN, and RYAN, Circuit Judges; and MATIA, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Uniprop, Inc. appeals the entry of summary judgment in favor of defendant, alleging that the district court erroneously concluded that Dolphin Partners, Inc. was a purchaser and not merely an option holder of a particular mortgage. We affirm the decision of the district court.
 
 
 2
 This case began in the summer of 1991, when the Resolution Trust Corporation (RTC) offered several mortgages for sale. Dolphin submitted a bid on some of these mortgages, one of which covered a manufactured housing community in Saginaw, Michigan (the Saginaw mortgage). This is the mortgage at issue in this case. During the first part of September, Dolphin and the RTC exchanged a series of letters concerning the terms of the bid on the package of mortgages, including the Saginaw mortgage. Then, on September 18, 1991, Dolphin and the RTC entered into a Commercial Mortgage Loan Sales Agreement (CMLSA). One of the attachments to the CMLSA listed the mortgages covered by the contract. The Saginaw mortgage was included on this list. Approximately three weeks after the parties signed the CMLSA, they exchanged another letter specifically concerning the Saginaw mortgage.
 
 
 3
 Uniprop's suit alleges that Dolphin breached its agency contract with Uniprop. According to Uniprop, the letters exchanged by Dolphin and the RTC, as well as the CMLSA, show that Dolphin acquired from the RTC an option to purchase the Saginaw mortgage. Under the terms of the alleged agency contract, Dolphin agreed to exercise this option on Uniprop's behalf, with the understanding that Uniprop, in turn, would front Dolphin the money to buy the mortgage and would pay Dolphin an agent's fee for the transaction. Dolphin, however, later refused to purchase the Saginaw mortgage for Uniprop and instead sold it to a different party.
 
 
 4
 Dolphin's position, both in the lower court and here, is that its contract with the RTC was for the actual purchase of the Saginaw mortgage and not merely an option to purchase. Dolphin also contends that it had no agency agreement with Uniprop. The district court agreed with Dolphin and granted summary judgment dismissing Uniprop's claim.
 
 
 5
 Thus court's review of a grant of summary judgment is de novo; we use the same test as used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings, and by affidavits, or by "depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)).
 
 
 6
 In granting summary judgment, the district court first found that Dolphin did not have an option from the RTC to purchase the mortgage in question. Rather, the court concluded that the September 18 CMLSA, which listed the Saginaw mortgage in the schedule of covered mortgages, was a binding contract between the RTC and Dolphin whereby Dolphin agreed to purchase the mortgage.
 
 
 7
 Section 2.01 of the CMLSA explicitly states that "[t]he Seller agrees to sell, and the Purchaser agrees to purchase, the Mortgage loans described in the Preliminary Mortgage Loan Schedule pursuant to the terms of this Agreement." As stated earlier, the Saginaw mortgage was included on that list. In addition, the CMLSA declares that it supersedes all prior understandings and agreements of Dolphin and the RTC:
 
 
 8
 This Agreement supersedes any and all prior discussions and agreements between the Seller and the Purchaser with respect to the purchase of the Mortgage Loans and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.
 
 
 9
 ... This Agreement and all Addenda, Exhibits and Schedules hereto constitute the final complete expression of the intent and understanding of the Purchaser and the Seller. This Agreement shall not be altered or modified except by a subsequent writing, signed by the Purchaser and the Seller.
 
 
 10
 CMLSA, Secs. 8.05, 8.06.
 
 
 11
 The district court correctly concluded that the CMLSA itself is a binding contract to purchase the Saginaw mortgage, and Uniprop has not presented any persuasive arguments that would allow this court to look beyond the face of the CMLSA to construe it as an option.
 
 
 12
 The district court also examined Uniprop's claim that the relationship between Dolphin and Uniprop was one of principal and agent. The district court thought the question was moot after it found that Dolphin was contractually bound to purchase the mortgage from the RTC. We agree. The validity of Uniprop's agency turns upon a finding that Dolphin had merely an option to purchase the Saginaw mortgage as distinguished from an obligation to purchase it.
 
 
 13
 The district court did not err in entering summary judgment for Dolphin. Consequently, the judgment below is AFFIRMED.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation