91 F.3d 143
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia J. BUTLER, Plaintiff-Appellant,
v.
OHIO POWER COMPANY, Defendant-Appellee.
 No. 95-3547.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1996.
 
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and ROSEN, District Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff Patricia J. Butler appeals the district court's grant of summary judgment in favor of defendant Ohio Power Company ("Ohio Power") in this action alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq., and Ohio Revised Code ("O.R.C.") §§ 4112.02 & 4112.99. On appeal, the issues are (1) whether a determination by the district court that plaintiff established a prima facie case of age discrimination precluded it from granting summary judgment to defendant, and (2) whether the district court's grant of summary judgment was erroneous because there was a genuine issue of material fact regarding whether defendant's legitimate, nondiscriminatory reasons for terminating plaintiff were pretextual. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 From 1964 until the early 1980s, plaintiff Butler worked in defendant Ohio Power's Meter Records Section in Steubenville, Ohio. In 1982 or 1983, her position changed, and she began working as a senior clerk in the Records Section of the Transmission and Distribution Department ("T & D") in Steubenville. As a senior clerk, plaintiff's duties included closing monthly blanket reports and regular work orders, preparing time sheets and proposals, and maintaining meter, equipment, and facilities records.
 
 
 3
 In the early 1990s, Jim Scott, who served as Records Supervisor for T & D Steubenville, supervised eight senior records clerks: namely, plaintiff Butler, Marlene Douds, Randi Givens, Janice Fullwood, Wayne Irvine, Karen Maclean, Marge Nemeth, and Clerical Supervisor Kim Jones. Ed Mowrer, the T & D Superintendent for the Steubenville Division, supervised both Jim Scott and Kim Jones.
 
 
 4
 Although Kim Jones was the direct supervisor of the records clerks and had some input into performance evaluations, Mr. Scott actually wrote the annual job performance reviews ("JPRs"). In Mr. Scott's evaluation of the Steubenville records clerks, plaintiff Butler was the only clerk to have received an overall rating lower than a three on a scale of one to five in the January/February 1993 JPR and one of only two individuals in the last two reviews to receive lower than a three on any of the nine performance factors evaluated in the JPR.
 
 
 5
 Plaintiff Butler contends that Ms. Jones did not treat her fairly because of her age. Plaintiff testified that younger clerks were shown "every facet of the job," while she was not shown "the work that had to be done" or informed "about the procedures of the job" "until the last year or year and a half." J.A. 200. In particular, plaintiff felt that everyone in the T & D department except Marlene Douds and her received "comparable/compatible units training" at the Canton division. Plaintiff acknowledged, however, that during her last year with Ohio Power, Mr. Scott gave her a computer and assigned her to take computer classes.
 
 
 6
 In the summer of 1993, Ohio Power commenced a significant restructuring of its organization, involving the consolidation of former divisions into "regions." Defendant states that this reorganization was "motivated by recent modest growth in the demand for new electrical generation, strict environmental regulations, and an increasingly competitive electricity market." Brief of Defendant at 2-3. As a part of the restructuring, the Steubenville and Canton Divisions of Ohio Power were consolidated to form the Eastern Region of Ohio Power. The Eastern Region was comprised of six area offices: Belmont, Canton, East Liverpool, New Philadelphia, Steubenville, and Wooster. William Sheffield was named Region Manager of the Eastern Region, and under Mr. Sheffield, there were six area managers with responsibility for each of their respective territories.
 
 
 7
 As a consequence of the restructuring and the consolidation of the Canton and Steubenville Divisions, the T & D Records Sections in those two divisions were consolidated in Canton as the Information Section of the Eastern Region. Engineering Manager Mark Garrison became the supervisor of the Information Section. As Engineering Manager, Garrison's responsibilities also included supervising an Engineering Section and a Graphics Section. As part of the reorganization, Eastern Region Manager Sheffield directed Garrison to staff his organization with the most qualified employees and to consider ability, job knowledge, flexibility, ability to accept change, job performance, and attitude. He was not instructed to give weight to seniority.
 
 
 8
 Prior to making his staffing decisions, Garrison reviewed the two most recent JPRs for each of the T & D Records Section employees in Canton and Steubenville. He also contacted the T & D Records Section supervisors in Canton and Steubenville to discuss the strengths and weaknesses of each of the employees in those sections. In response to Garrison's inquiry, Scott, plaintiff Butler's former supervisor, informed him that Butler made too many mistakes in her work, that she still required supervision and redirection on matters that she should have been performing by herself, and that she was not multi-task oriented. Scott ranked Butler and Marlene Douds as the lowest of the T & D records clerks in Steubenville.
 
 
 9
 Based on his discussions with Scott, former T & D Superintendent Ed Mowrer, and Canton T & D Records Supervisor Jim Lindesmith and following his review of the last two JPRs for the employees in the T & D Records Sections in Steubenville and Canton, Garrison recommended twelve clerks to Region Manager Sheffield to staff the Information Section in Canton. That group did not include Butler or Douds. Garrison noted that "[t]heir [Butler and Douds's] performance has not been of the level that will be required to function in a larger group under one supervisor, who will only be able to provide a minimum amount of supervision to each employee." J.A. 296. On August 27, 1993, Mowrer and Garrison met with plaintiff Butler to inform her of their decision to terminate her. According to Butler, they told her that her job as she knew it was gone and that as of that day she would no longer be working at Ohio Power. At the time of her termination, plaintiff was 49.
 
 
 10
 Four of the twelve individuals selected for the Information Section were older than Butler. The five individuals selected from the Steubenville Division were Wayne Irvine, age 51; Janice Fullwood, age 50; Kim Jones, age 37; Marge Nemeth, age 37; and Karen Maclean, age 34. The seven selected from the Canton Division were Eileen Young, age 57; Joanne Furchak, age 51; Wilma Lambert, age 42; Barbara Cerne, age 42; and Valeria Recchio, Diane Shaeffer and Michelle Heid, all younger than age 40. Although not selected to join the Information Section, Steubenville senior records clerk Randi Givens, age 30, was assigned to work as a line clerk in Steubenville. Subsequently, Givens resigned, and Rebecca Stasiliuwicz, an employee in the accounting department, was transferred to that job. With respect to the other two sections reporting to Garrison, Engineering and Graphics, his recommendations led to the termination of a Planner, age 23; a Drafter, age 26; and two Engineers, ages 24 and 42. Through February 1994, a total of 16 individuals in the Eastern Region were terminated as a result of the restructuring. Eight of these individuals were under the age of 40.
 
 
 11
 The termination of plaintiff Butler took place at the same time as other terminations throughout Ohio Power resulting from the reorganization. A breakdown of defendant's employees terminated and retained by job title and age on August 27, 1993 indicated that of the 129 senior clerks employed prior to that date, 42 were under 40, while 87 were 40 and older. Of the entire group, two senior clerks younger than 40 were terminated in August 27, 1993, while eight senior clerks 40 and older were terminated.
 
 B.
 
 12
 On October 7, 1993, plaintiff Butler filed an affidavit with the Ohio Civil Rights Commission ("OCRC"), asserting that she was unlawfully terminated by defendant on the basis of age. She also filed a written charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). Following a preliminary investigation, the OCRC determined that no probable cause existed to believe that defendant had unlawfully discriminated against plaintiff because of her age. On October 27, 1994, the EEOC issued a determination that the OCRC's investigation showed insufficient evidence to establish a violation of the ADEA.
 
 
 13
 On May 25, 1994, plaintiff filed a complaint in district court alleging that her termination by defendant violated both the ADEA and state employment discrimination statutes. Following discovery, defendant moved for summary judgment. On April 14, 1995, the district court held oral argument, and on April 18, 1995, it granted summary judgment to defendant. This timely appeal followed.
 
 II.
 
 14
 Plaintiff appeals the district court's grant of summary judgment in favor of defendant. We review a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 603 (6th Cir.1988). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); accord Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir.1994), cert. denied, 116 S.Ct. 50 (1995). On appeal, we must consider the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
 
 
 15
 Plaintiff's complaint alleges that her termination by defendant was based on age and violated the ADEA, 29 U.S.C. § 621 et seq., and O.R.C. §§ 4112.02 & 4112.99.[1] The ADEA provides that "[i]t shall be unlawful for an employer--(1) ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The prohibitions of the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Although the ADEA is intended to broadly prohibit arbitrary work place discrimination on the basis of age, see TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 120 (1985) (quoting Lorillard v. Pons, 434 U.S. 575, 577 (1978)), a plaintiff who brings a claim under the ADEA must prove that age was a "determining factor" in the adverse action, or that, but for the plaintiff's age, she would not have been terminated. Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1023 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993). "[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age[,]" "even if the motivating factor is correlated with age." Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 & 611 (1993).
 
 
 16
 A plaintiff may make out a case of age discrimination in one of two ways. First, she may present direct evidence that the defendant fired her because of her age. In such cases, the burden then shifts to the employer to prove that it would have terminated the plaintiff even if it had not been motivated by age discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081 (6th Cir.1994). Alternatively, a plaintiff may present circumstantial evidence sufficiently strong to raise an inference that the employer's discriminatory animus was the motivation for the plaintiff's termination. Id.
 
 
 17
 Pursuant to the traditional analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), a plaintiff attempting to make out a prima facie case of age discrimination based on circumstantial evidence must demonstrate (1) that she was a member of the protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified for the position, and (4) that she was replaced by a substantially younger person. O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1309 (1996); Phelps, 986 F.2d at 1023. However, we have held that the McDonnell Douglas test is not to be applied mechanically in age discrimination cases, but rather on a case-by-case basis, focusing on whether age was in fact a determining factor in the employment decision. Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 n. 9 (6th Cir.), cert. denied, 498 U.S. 878 (1990). Furthermore, in work force reduction or corporate reorganization cases,[2] we have held that in order to establish a prima facie case, a plaintiff not only must show that he was age 40 or older, was discharged, and was qualified for the position, but also must present additional "direct, circumstantial, or statistical evidence that age was a determining factor in his job displacement." Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 517 (6th Cir.1991) (citing Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986)). "[A] plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." Id.
 
 
 18
 Once an employee establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the action taken. Burdine, 450 U.S. at 253. If the employer carries its burden of production, the McDonnell Douglas presumption of intentional discrimination "drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). The employee must then prove by a preponderance of the evidence that the defendant intentionally discriminated against her. She may accomplish this by showing that the legitimate reasons offered by the employer were not its true reasons but were a pretext for intentional discrimination. Id. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Hicks, 113 S.Ct. at 2752 (emphasis in original). In order to show pretext, an employee must demonstrate " 'by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that [the proffered reasons] were insufficient to motivate discharge.' " Manzer, 29 F.3d at 1084 (quoting McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir.1993)).
 
 
 19
 Analyzing plaintiff's evidence under the reorganization/reduction-in-force standards, the district court noted that there was no dispute that plaintiff Butler was "a member of a protected class, that she was qualified for the senior records clerk job, and that she was terminated." J.A. 308. It further held that plaintiff's statistical evidence and the alleged disparate treatment of plaintiff by Kim Jones was sufficient "additional circumstantial evidence" tending to indicate that defendant singled her out for termination because of her age to establish a prima facie case of discrimination. J.A. 315. The court continued by holding, however, that "there [could] be no dispute" that defendant had met its burden to articulate a legitimate, nondiscriminatory reason for plaintiff's discharge by stating that it "terminated Plaintiff and reassigned her duties due to corporate restructuring" and by declaring that plaintiff failed to survive the reorganization because of "inadequate performance and insufficient job skills." J.A. 316. Finally, the court granted summary judgment to defendant because it found that plaintiff could not demonstrate that defendant's legitimate, nondiscriminatory reasons were pretextual. J.A. 323.
 
 A.
 
 20
 First, plaintiff argues that the district court's grant of summary judgment to defendant was improper because in cases where a plaintiff has established a prima facie case and a defendant has articulated a legitimate, nondiscriminatory reason, only a fact-finder may decide whether the defendant's reason is pretextual. Plaintiff relies on language from Hicks that she interprets as establishing a right for a plaintiff "to have a jury consider whether the proffered reason by the defendant was not the true reason for plaintiff's termination." Brief of Plaintiff at 21.
 
 
 21
 This argument is not persuasive. We have held that summary judgment is proper on an ADEA claim if the plaintiff either fails to establish a prima facie case or is unable to demonstrate pretext sufficient to rebut a defendant's legitimate nondiscriminatory reasons. Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1395 (6th Cir.1993) (per curiam); McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir.1990). As we stated in Barnhart:
 
 
 22
 The plaintiff retains the ultimate burden of persuasion in an employment discrimination case. If the defendant employer offers evidence of a legitimate non-discriminatory reason for a plaintiff's firing, plaintiff, in order to withstand a motion for summary judgment, must "demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination."
 
 
 23
 Id. at 1390 (quoting Burdine, 450 U.S. at 256). Cases decided in this circuit following the Supreme Court's decision in Hicks have continued to uphold a district court's grant of summary judgment where the plaintiff failed to rebut the employer's articulated reason for his adverse action. See Gray v. Preform Sealants, Inc., 47 F.3d 1168 (6th Cir.1995) (unpublished disposition); see also Manzer, 29 F.3d at 1083-86 (affirming directed verdict where plaintiff established prima facie case but failed to present sufficient evidence of pretext). Therefore, we conclude that the district court could properly grant summary judgment where plaintiff established a prima facie case but failed to present sufficient evidence that defendant's legitimate nondiscriminatory reasons were pretextual to create a genuine issue of material fact.
 
 B.
 
 24
 Second, plaintiff argues that the district court erred in granting summary judgment on her claim for age discrimination because there was a genuine issue of material fact regarding whether defendant's articulated reasons for her termination were merely pretextual. Defendant articulated two legitimate, nondiscriminatory reasons for Butler's termination. First, it stated that the termination was part of a corporate restructuring and downsizing; second, it stated that plaintiff's job performance was inadequate. Plaintiff asserts that there are five ways in which she demonstrated that defendant's articulated reasons were actually a pretext for discrimination.
 
 
 25
 First, plaintiff argues that defendant's assertion that her termination was part of a corporate downsizing was false and that defendant did not actually reduce its work force. She asserts that subsequent to her termination, defendant welcomed 76 new hires in its corporate newsletter, advertised for new jobs in its telephone service center, and hired temporary employees. However, none of these actions demonstrate that there was not a reduction in force. In an affidavit submitted to the district court, Stephen D. Thomas, Ohio Power's Compensation and Benefits Manager, stated that "the expansion of the centralized telephone center in Groveport, Ohio" was part of the restructuring and was designed to allow consolidation and relocation of certain customer service functions "from the various statewide area offices to one central location in Groveport." J.A. 261. Plaintiff points to no evidence that contradicts this statement, and thus we do not find that the advertisements create a factual issue with regard to whether there was a work force reduction.
 
 
 26
 Furthermore, Thomas stated that 56 of the 76 new employees that plaintiff refers to "were hired to work as customer service representatives in the Groveport telephone center, to fill positions at power plants (which were excluded from the restructuring/combination program), and to fill vacancies created by the relocation of the General Office Accounting Department from Columbus to Canton." J.A. 261. He further stated that the work performed by these employees is "unrelated to the work that Patricia Butler performed as a records clerk in the [T & D] Department in Steubenville." J.A. 262. Again, Butler points to nothing which contradicts defendant's explanation.
 
 
 27
 Finally, plaintiff's reference to defendant's use of temporary contract employees does not support her contention that no work force reduction occurred. Defendant submitted undisputed testimony to the trial court that these employees were used to fill temporary vacancies or to work on temporary projects. In addition, plaintiff does not dispute defendant's assertion that no employees were hired subsequent to plaintiff's termination to perform records clerk work in the newly created Information Section.
 
 
 28
 Butler's argument of pretext with respect to the work force reduction fails to examine the types of employees hired or the reasons that they were hired. The advertisement, defendant's 76 "new hires," and the use of contract employees are not inconsistent with the restructuring that led to plaintiff's termination and fail to create a genuine issue of material fact as to the reason for defendant's actions.
 
 
 29
 Second, plaintiff argues that the "zero-based selection process" that defendant used to identify individuals it would terminate in the reorganization was merely a "guise" for discrimination. She argues that there was a discrepancy between the testimony of Mark Garrison and that of James Bagnoli, the Personnel Services Manager of Ohio Power, regarding whether William Sheffield's instructions on staffing guidelines were oral or written and that this discrepancy "raises a question of veracity for a jury to determine." Brief of Plaintiff at 26. This argument likewise fails to show pretext. A discrepancy over whether the staffing guidelines were oral or written does not create an issue of material fact sufficient to allow plaintiff to survive summary judgment because it does not in any way demonstrate that defendant's statement that it based its decision in part on plaintiff's poor JPRs was false.
 
 
 30
 Third, plaintiff argues that the process by which defendant trained its managers to notify employees of their termination is evidence of pretext. She points to a training manual provided to the managers that instructed them not to discuss with the newly terminated employee "how the decision was reached other than for business reasons." J.A. 223. Plaintiff argues that "[t]his statement obviously suggests that reasons other than 'business reasons' existed for terminating the Ohio Power employees, including Patricia Butler." Brief of Plaintiff at 26. However, we find that this statement in the training manual fails to demonstrate that defendant's articulated reasons are pretextual. The fact that Ohio Power limited its managers' explanations of the reasons for the terminations to a statement that they were based on business necessity does not in any way show that business necessity was not in fact the real motivation for plaintiff's termination.
 
 
 31
 Fourth, plaintiff points out that defendant's restructuring did not result in an even termination throughout all age groups because all of the senior clerks under the age of 40 were retained, while only two of the senior clerks over the age of 40 were retained. Therefore, in plaintiff's view, "Ohio Power's 'restructuring' was nothing more than an internal scheme to accomplish discriminatory goals relating to older employees." Brief of Plaintiff at 27.
 
 
 32
 We noted in Barnes that "[w]hen a plaintiff's statistics indicate a disproportionate discharge rate for a protected group there are three possible explanations for the discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias." Barnes, 896 F.2d at 1468. We continued by delineating several ways for a defendant to attack a prima facie case established by statistics. One of these ways is to demonstrate that even if the plaintiff's statistics indicate that bias could have played a role in some of the decisions to discharge, bias did not play a role in the decision to discharge a particular plaintiff. We noted that a defendant could undercut the importance of a plaintiff's statistical proof by presenting evidence that a plaintiff was less qualified than others occupying comparable positions. "Unless [a plaintiff] can show that the defendant's explanations are inherently suspect or can present other direct or circumstantial evidence suggesting that the proffered reasons are not true, then the defendant[ ] [is] entitled to summary judgment." Id. at 1469.
 
 
 33
 In this case, defendant presented evidence that plaintiff was less qualified than the other senior clerks in her department, and, therefore, defendant undercut the inference raised by the statistics that age was a factor in the decision to terminate plaintiff. Plaintiff has come forward with no evidence that would indicate that defendant's evaluation of her job qualifications was inherently suspect. Thus, we conclude that her "statistical evidence" does not demonstrate that defendant's articulated reasons were a pretext for age discrimination.
 
 
 34
 Finally, plaintiff argues that the facts that she was not told at her termination meeting on August 27, 1993, that poor job performance was a reason for her termination and that her termination for poor job performance was not noted on her personnel records demonstrate that defendant's articulation of unsatisfactory job performance as a reason for her discharge is merely an "after-the-fact pretext." Brief of Plaintiff at 27. Plaintiff argues in part that defendant's notation of "no misconduct" on her personnel forms was a "guise so terminated employees could get their unemployment" and that "[t]his raises an issue of fact regarding the existence of other hidden meanings behind any of the 'articulated, legitimate reasons' for Patricia Butler's termination." Brief of Plaintiff at 27-28.
 
 
 35
 These facts are insufficient to demonstrate pretext. James Bagnoli stated in his affidavit that each terminated employee was provided the same statement regarding the reason for his termination, J.A. 39-40, 44, and Stephen Thomas stated that each terminated employee had the same information placed in his personnel record. J.A. 58-59. The fact that defendant's articulated reasons for the termination decision were not all revealed to plaintiff at her termination meeting does not lead to the conclusion that defendant's decision was motivated by age. The record supports defendant's assertion that plaintiff's poor performance motivated her discharge, and this reason is clearly a sufficient basis for defendant's decision. Plaintiff has failed to demonstrate sufficient evidence of pretext to rebut defendant's legitimate, nondiscriminatory reasons for her dismissal, and therefore we conclude that the district court's grant of summary judgment on this basis was not improper.[3]
 
 III.
 
 36
 For the reasons stated, the summary judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Because the evidentiary framework of McDonnell Douglas/Burdine described below also applies to claims of age discrimination under Ohio state law, we will discuss only the federal claim. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992); In re Brantley, 518 N.E.2d 602, 604 (Ohio Ct.App.1987)
 
 
 [2]
 This court has defined a work force reduction as follows:
 A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.
 Barnes, 896 F.2d at 1465.
 
 
 [3]
 On August 24, 1995, plaintiff filed a Notice of Supplemental Authority to her brief that alleged that by requiring her to release and surrender her age discrimination claim as a condition to receiving her severance pay, defendant discriminated against her and other employees over the age of 40. However, plaintiff failed to raise this issue before the district court, and accordingly, we will not address it on appeal. Noble v. Chrysler Motors Corp., Jeep Div., 32 F.3d 997, 1002 (6th Cir.1994)