979 F.2d 850
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerry R. HARRIS, Plaintiff-Appellant,
v.
Troy D. WELCH, Defendant-Appellee.
 No. 92-5130.
 United States Court of Appeals, Sixth Circuit.
 Nov. 13, 1992.
 
 Before RALPH B. GUY, JR. and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Jerry R. Harris, was hired as the Chief of Police for the city of Middlesboro, Kentucky, on December 1, 1989. On March 13, 1991, plaintiff was discharged by defendant-appellee, Troy Welch, the Mayor of Middlesboro. In response to plaintiff's firing, the Middlesboro Common Council held an investigative hearing after which they requested Mayor Welch to reinstate plaintiff. On May 6, 1990, plaintiff filed suit in the Bell County Circuit Court of Kentucky seeking reinstatement and back pay. On July 5, 1990, plaintiff filed a complaint in the United States District Court for the Eastern District of Kentucky, London Division, alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983 and fraud arising from the events surrounding his hiring and subsequent discharge. Plaintiff sought compensatory and punitive damages, as well as attorney's fees. On September 27, 1990, Mayor Welch issued an executive order reinstating defendant with back pay and benefits dating back to March 27, 1990. The state court action was thereafter dismissed as moot. On August 23, 1991, the federal district court, pursuant to a Motion For Summary Judgment filed by defendant, dismissed the federal action holding that plaintiff had no constitutionally protected property interest in his employment. Therefore, the 42 U.S.C. § 1983 action was dismissed. The accompanying fraud charge was also dismissed for want of federal jurisdiction. Plaintiff filed a motion pursuant to FED.R.CIV.P. 59 to Alter, Amend or Vacate the Judgment on the basis that the district court should have given "preclusive effect" to the decision of the Common Council of Middlesboro. On January 7, 1992, plaintiff's motion was denied. Plaintiff filed a timely Notice of Appeal.
 
 I.
 
 2
 In 1989, the city of Middlesboro began a search for a new chief of police. Mayor Welch appointed a three person commission responsible for selecting a qualified candidate. The commission picked plaintiff and soon afterward, he was hired by the city. Unfortunately, differences began developing almost immediately between the mayor and Chief Harris. Mayor Welch contacted the Attorney General's Office (AG) for the purpose of determining whether he had the authority to terminate Chief Harris. The AG responded by first stating they were not issuing a formal opinion because the procedures involved had not been properly followed. The AG, nevertheless, did write an advisory letter based upon the facts as related to them by the Mayor. The AG's letter stated that Chief Harris had not been employed for more than six months, therefor, he qualified as a probationary employee pursuant to Middlesboro City Ordinance § 5.1 which provides in relevant part as follows:
 
 Section 5.1: Probation
 
 3
 A. All personnel initially appointed to a permanent position shall be on probationary status for six months.
 
 
 4
 B. ...
 
 
 5
 C. A new employee may be dismissed without right of appeal during the original probationary period, after which time he/she may be dismissed for just cause only with the approval of city council.
 
 
 6
 The AG's informal letter also cited Rottinghaus v. Board of Commissioners of the City of Covington, 603 S.W.2d 487 (1979), for the proposition that a six month probationary period is valid under Kentucky law. In Rottinghaus, a rookie police officer was removed from his position during the probationary period. Accordingly, the AG felt that within plaintiff's first six months of employment, his status could be terminated under the mayor's authority to terminate probationary employees. Upon receipt of the AG's letter, Mayor Welch promptly fired Chief Harris.
 
 
 7
 After the firing of Chief Harris, the Common Council held a hearing, at the request of Chief Harris, to investigate the issue. The Council determined that there was no viable support for Chief Harris's discharge. As a result, Mayor Welch was requested by Council to recognize that Chief Harris had been improperly discharged. The Mayor did not attend the hearing, however, while not conceding the impropriety of his actions, he did accept the recommendation of Council and reinstated Chief Harris with full salary and benefits dating back to the March 27, 1990.
 
 II.
 
 8
 On appeal, plaintiff contends that the district court erred by not granting Summary Judgment in his favor. Plaintiff argues that pursuant to the hearing held by the Common Council, the subsequent finding that he had been unjustly discharged should have been binding on the district court under the "preclusive effect" doctrine. Accordingly, plaintiff further argues that the district court was required to find in his favor on his § 1983 claim.
 
 
 9
 The preclusive effect doctrine has been enunciated by the United States Supreme Court as follows:
 
 
 10
 [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it to litigate," Utah Construction and Mining Co., supra, at 422, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.
 
 
 11
 University of Tennessee v. Elliott, 478 U.S. 788, 799 (1985) (footnote omitted).
 
 
 12
 In the case at bar, plaintiff made his "preclusive effect" argument to the district court via a FED.R.CIV.P. 59 Motion to Amend, Alter, or Vacate the Judgment. Judge Hood, speaking for the district court, explained that the issue before the court was whether, and to what extent, Kentucky law vests hiring and firing decisions of city personnel with the mayor. Judge Hood noted that Elliott requires deference with respect to factual determinations made by a state agency acting in a quasi-judicial capacity. The judge, however, also found that the interpretation of Kentucky statutes and Middlesboro ordinances were questions of law and not of fact. Therefore, the Council's legal determinations on questions of law were not binding on the district court and not entitled to be given preclusive effect.
 
 
 13
 Upon review, it is clear that the holding in Elliott applies to administrative factfinding as opposed to legislative interpretations of law. It is equally clear that plaintiff's argument before the district court relied on his interpretation of Kentucky statutes and Middlesboro local ordinances. Hence, the district court properly found that the "preclusive effect" doctrine was not applicable.
 
 III.
 
 14
 Defendant next contends the district court erred by not finding that a contract existed between Chief Harris and the city of Middlesboro and that said contract would provide the property interest in his employment needed to sustain his claims. Defendant argues that since the district court found no employment contract existed, it must have presumed what evidence would have been introduced at trial. Defendant further argues that there was evidence in the record of a contract's existence which should have precluded the granting of summary judgment on this issue.
 
 
 15
 This court's review of the granting of a motion for summary judgment is de novo. Brooks v. American Broadcasting Cos, 932 F.2d 495, 500 (6th Cir.1991). Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Once the moving party has met his burden of production, the nonmoving party cannot rest on the pleadings to get to a jury. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial--whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." Id., at 250.
 
 
 16
 In the case at bar, plaintiff has failed to introduce evidence of a contract. What plaintiff is apparently attempting to argue is that there was evidence of an implied contract before the district court. Plaintiff initially points to the job description for Police Chief which requires five years of progressively increasing responsibility as a police officer. Plaintiff suggests that this is evidence that the position is non-probationary. Plaintiff also contends that if the case had gone to trial, it would have been established that the Mayor, with the concurrence of council, had made a contract with Chief Harris that was never intended to be probationary. Finally, plaintiff argues that Mayor Welch's acceptance of the Council resolution requesting Chief Harris to be reinstated was a ratification of the employment contract.
 
 
 17
 This court's review, however, must be de novo. Therefore, this court's inquiry is limited as our review is bound by the evidence in the record before us. Plaintiff has failed to introduce any evidence which would demonstrate the existence of an employment contract, either express or implied. Plaintiff clearly carried the burden to introduce this evidence to support his claim, if it existed, but has failed to do so. There is no evidence in the record that the parties ever contemplated overriding of the statute designating plaintiff's status as a probationary employee. In the absence of such evidence, we must presume that the Chief Harris's hiring was subject to all the ordinances of Middlesboro, including the one that creates a six month probationary status for ALL employees. As to plaintiff's later reinstatement, there is no evidence that Mayor Welch conceded his lack of authority by this action. Rather he acted within his authority to reinstate Chief Harris at the request of Council while not conceding this point. Plaintiff would have this court believe that Mayor Harris has many times acknowledged the wrongfulness of his actions. There is nothing in the record, however, to support such a statement. Even if there were, there is still nothing in the record to suggest the mayor, in fact, acted improperly. Accordingly, the district court correctly found that Chief Harris had no constitutionally protected property interest by virtue of an employment contract.
 
 IV.
 
 18
 Plaintiff contends the district court erred by dismissing Count Two for fraud and misrepresentation in his complaint. Plaintiff argues that it should not have been dismissed because, although it was a pendent state claim, the underlying facts were the same as Count One. Plaintiff also argues that his complaint for fraud could be interpreted as a deprivation of his due process rights under the constitution. As plaintiff views it, he was induced to leave his home and take the job in Middlesboro based upon his "constitutional right" to seek and hold employment. Further, he lost said employment due to the fraudulent actions of the mayor who had no intention of keeping plaintiff employed.
 
 
 19
 Plaintiff cites a long litany of constitutional cases for the proposition that his cause of action had constitutional dimensions This argument, however, is unsupported by the record. A fair reading of Count Two of the complaint demonstrates that it is clearly a cause of action for fraud and misrepresentation. There is no indication that plaintiff, in his complaint, intended to invoke any constitutional arguments in this count. Furthermore, plaintiff did not raise this argument in his Motion to Amend, Alter or Vacate.
 
 
 20
 Nevertheless, a cursory review of the record demonstrates that plaintiff was not even aware of the allegedly fraudulent statements made by the mayor until after plaintiff had already accepted employment. These purportedly fraudulent statements were made to the general populace of Middlesboro regarding the need for an honest police chief to be hired to eliminate corruption and were made during the mayor's campaign for re-election. The gist of plaintiff's argument under Count Two is that these statements amounted to fraud and that the mayor only intended to hire plaintiff until after he was successfully re-elected at which time plaintiff would be fired. Plaintiff alleged that the mayor never had any intention of keeping him in his position after the general election. However, these statements were neither made to plaintiff nor is there evidence he knew of the statements before he accepted the position. Therefore, he could not have relied upon them and they could not form the basis for a contract.
 
 
 21
 Moreover, as was demonstrated earlier, the mayor's conduct was within his statutory authority. Even had plaintiff attempted to raise his fraud and misrepresentation claim under 42 U.S.C. § 1983, he would not have been able to do so successfully without first demonstrating that he had a protected property interest in his employment. Parratt v. Taylor, 451 U.S. 527 (1981); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339 (6th Cir.1992). As was stated earlier, plaintiff has failed to demonstrate he, in fact, had a property interest in his employment.
 
 
 22
 More importantly, the district court correctly determined that once Count One had been dismissed, the district court could dismiss Count Two because it was a pendent state claim not covered under 42 U.S.C. § 1983. Accordingly, the district court's dismissal was proper.
 
 V.
 
 23
 The decision of the District Court be and is hereby AFFIRMED.