**Howard JACKSON**

v.

**TENNESSEE VALLEY AUTHORITY and Ickes-Braun Glasshouses, Inc.**

**No. 74–343–NA–CV.**

United States District Court, M. D. Tennessee, Nashville Division.

March 17, 1976.

Harlan Dodson, Jr., Hooker, Keeble, Dodson & Harris, Nashville, Tenn., Marks & Fleming, Clarksville, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, Charles W. Van Beke, Associate Gen. Counsel, Larry S. Bush, Atty., Tennessee Val. Authority, Knoxville, Tenn., for Tennessee Val. Authority.

John K. Maddin, Jr., Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for Ickes-Braun Inc.

## MEMORANDUM

MORTON, District Judge.

Plaintiff Howard Jackson, a citizen and resident of the Middle District of Tennessee, sues defendants Tennessee Valley Authority (TVA) and Ickes-Braun Glasshouses, Inc. (IBG) in the amount of $1,000,000.00 for personal injuries which he received in an accident at defendant TVA's Cumberland Steam Plant in Cumberland City, Tennessee. Defendant TVA is a wholly owned federal corporation, able to sue and be sued in its own name, created by the Tennessee

Valley Authority Act of 1933, as amended, 16 U.S.C. § 831. Defendant IBG is an Illinois corporation. Jurisdiction of this court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331 and 1332.

TVA's Cumberland Steam Plant is a large electric power generating facility. The plant was designed with eight large raised barrel vault type skylights located on the roof of its turbine room, at a height of approximately eighty feet above the interior floor. These skylights are similar in appearance to greenhouses, approximately thirty-five feet wide and sixty feet long. They rise in an arc like a half-barrel to a maximum height of approximately eight feet above the flat roof surface.

A single barrel vault skylight is located on either end of the roof above the turbine room, with the remaining six barrel vaults arranged in pairs at even intervals along the roof. Each barrel vault consists of forty plexiglas (acrylic plastic) panels eight feet by eight feet, supported by a gridwork of arched aluminum beams, which are three to five inches in width. The individual plexiglas panels are dome-shaped, rising to a maximum height of eight inches above the supporting aluminum framework. The plexiglas of which they are constructed is a bronze-tinted, transparent material, approximately one-quarter inch thick. The surface of the plexiglas is smooth and slick.

Defendant IBG was the successful bidder on the TVA contract to manufacture and install the barrel vault skylights. IBG, as an independent contractor, agreed to manufacture and install the barrel vault skylights at a contract price of $168,700.00. The skylights at Cumberland Steam Plant, which were accepted by TVA in November of 1972, were the first skylights of the barrel vault type ever used by defendant TVA. However, it appeared that IBG has installed many skylights of this type over a period of approximately fifteen years.

Plaintiff was injured on August 6, 1973, when he fell through one of the plexiglas panels on barrel vault # 7. Plaintiff fell a distance in excess of eighty-five feet, landing on the floor of the turbine room below and suffering extensive injuries to his feet and legs.

At the time of the accident, plaintiff was employed by the George Tarbuk Company (Tarbuk), which had contracted with defendant TVA as an independent contractor to do painting work on the Cumberland Steam Plant. Plaintiff, who was twenty-two years old and had just completed his junior year at Austin Peay State University, was employed by Tarbuk as a painter's helper. His duties did not include actual painting; his primary function was to pour and mix paints, but he was occasionally required to perform other miscellaneous tasks. Plaintiff had been working for Tarbuk slightly in excess of one week at the time of the accident.

On the morning of the accident, plaintiff's foreman instructed him to accompany a journeyman painter, Joe Wilbanks, to the roof above the turbine room to assist him in removing cloth canvases from the barrel vault skylights. These muslin canvases, which Tarbuk had placed upon the skylights to protect them from paint overspray, were needed for use by Tarbuk in another area of the construction site. Plaintiff testified that at first he attempted to sling the canvases off the skylights while standing on the flat roof surface, because he was reluctant to climb upon the skylights. However, this method of removing the canvas proved to be impractical, because the material caught on the bolts on the metal framing around the plexiglas. Joe Wilbanks was atop the skylights removing the canvas, so plaintiff followed his example and began climbing upon the skylights in order to assist Wilbanks in taking off the canvases.

Wilbanks testified that he was walking mainly upon the aluminum framing, though in turning it was necessary to place his foot upon a portion of the plexiglas panels. Plaintiff walked partly on the plastic and partly on the metal ribs. He testified that he "wasn't really watching" where he stepped. Plaintiff indicated that he followed the example of Wilbanks, who did not appear to plaintiff to be watching too closely as to where he placed his feet. Wil-

banks was working at the opposite end of each barrel vault from plaintiff, and plaintiff admitted that he therefore did not have a clear view of Wilbanks' feet.

Plaintiff and Wilbanks had removed the covers from three or four barrel vaults prior to climbing atop barrel vault # 7, where the accident occurred. On the barrel vault adjacent to # 7, plaintiff had at one point come down the side of the barrel vault and placed his foot in the center of one of the plexiglas panels. The panel had given way under plaintiff's weight, but had "popped up" to its normal position after plaintiff removed his foot from its surface. Plaintiff testified that he was of the opinion that it was safe to walk on the plexiglas panels, and that he had assumed that he would be warned if there were any danger. Plaintiff's testimony indicated that he was aware that it was a long distance to the turbine room floor below.

When plaintiff began working on barrel vault # 7, he fell through one of the plexiglas panels. Joe Wilbanks testified that he heard the plexiglas crack immediately prior to plaintiff's fall, and that he heard plaintiff call out. Plaintiff tried to prevent his fall by holding onto the muslin canvas, but it ripped and he fell through the panel and down to the floor of the turbine room below, a distance in excess of eighty-five feet.

The proof at trial showed that there was a hole the size of a fist in the panel through which plaintiff fell. The hole had been noted in the project diary of TVA engineering inspector, William K. Preacher, on July 24, 1972, and patched with cardboard and sealant by TVA personnel. Several of the panels in other barrel vaults were also broken. The evidence showed that the panels had been broken as the result of various objects (such as rock from nearby blasting operations) falling through them, rather than any defect in the plexiglas itself. The testimony at trial indicated that TVA was responsible for repairing the panels which were broken by falling objects, as the three-year warranty in the TVA–IBG contract provided only that the barrel vaults were "guaranteed for a period of three years against leakage and all defective workmanship."

The evidence at trial showed that the plexiglas panels were designed to resist a live load of 25 pounds per square foot, a specification directed solely toward the type of uniform loading resulting from weather conditions, primarily snow. The skylights were not designed to support persons climbing or walking on them, although the metal ribs of the skylight were capable of bearing the weight of a man. The evidence was somewhat inconclusive with regard to the capacity of the skylights to bear the type of weight which would result from a man walking on the plexiglas panels. Such conditions would bring into consideration the factor of impact loading, which involves different dynamics from uniform loading. However, the preponderance of the evidence indicated that an undamaged plexiglas panel of the type on the barrel vaults probably would be able to withstand the weight of a man walking carefully on top of it.

It was undisputed that the presence of a fist-sized hole in one of the plastic panels would drastically reduce its weight-bearing capacity. Thus, the evidence showed that the presence of the hole in the plexiglas panel through which plaintiff fell was definitely a major factor in his fall.

The evidence showed that the roof on which the skylights were located was an area to which access was controlled and limited to those employees of TVA or independent contractors who were there to perform specific tasks. TVA officials were cognizant of the fact that anyone working atop the barrel vaults would be exposed to the danger of falling through a plexiglas panel, and they were extremely skeptical of the weight-bearing capacity of even a non-broken plexiglas panel. All TVA personnel performing work upon the barrel vaults were given specific instructions with regard to the appropriate safety measures to be taken for work on the barrel vaults. These instructions provided that the employees should walk only upon the metal ribs and that the employees should be secured by a

safety belt and tied off to a hand line. The evidence showed that TVA employees performing work atop the barrel vaults did in fact take the precautions ordered by TVA.

Donald R. Aaron, a partner in Tarbuk who was supervisor of the painting job at Cumberland City, testified that he was aware of the dangers involved in working atop the barrel vaults. He testified that he had met with TVA officials several times to discuss safety procedures on the construction site, and that he had been informed that the metal ribs on the skylights were capable of bearing the weight of a man. Aaron testified that he had instructed his employees to stay off the plexiglas panels and walk only on the metal ribs, as he believed that the plexiglas panels were not a safe walking surface. Aaron further testified that he had given instructions that apprentices should not be sent to work on the skylights. However, Aaron admitted that to his knowledge plaintiff was never warned about the dangers of the plexiglas, nor given any safety instructions. Aaron could not recall any specific details of his conversations with TVA officials concerning safety. However, the uncontradicted testimony of Richard Reinsch, a TVA engineer, indicated that Reinsch had specifically instructed Aaron that any men working atop the barrel vaults should wear safety belts and be tied off with hand lines to protect them against the hazard of falling through the plexiglas to the floor below.

The evidence at trial indicated that despite TVA's instructions that men working on the barrel vaults were to be tied off, Tarbuk limited its safety precautions to instructing employees to walk on the metal ribs and avoid the plexiglas and to instructing the foreman that he should not send apprentices up on the skylights.

There was no credible evidence which would indicate that plaintiff was warned about the dangers of the skylights by any Tarbuk or TVA personnel. There were no signs anywhere on the roof posting warnings with regard to the dangers of the skylights generally, and there were no signs or warnings posted with regard to the broken plexiglas panels. Plaintiff was not given any safety equipment when he accompanied Wilbanks to the roof.

When plaintiff fell through the plexiglas panel, he landed in a standing position on the turbine room floor some eighty-five feet below. The impact on landing caused severe crushing injuries to both of plaintiff's feet. Dr. Frank Jones, the orthopedic surgeon who treated plaintiff, testified that the fall would probably have been fatal to most people. He further testified that it is a remarkable achievement that plaintiff has been able to walk again. Plaintiff suffered a fracture of the left tibia, ruptured ligaments of his left knee, and severe crushing injuries to both feet. The bones of his feet were pushed all the way through the soles, and it was necessary to remove the talus bone from both feet. There have been problems with regard to the healing of the left foot, and Dr. Jones testified that some possibility exists that the complications in the left foot may eventually necessitate amputation.

As a result of the injuries sustained in this unfortunate accident, plaintiff has considerable permanent physical impairment which will prevent him from running, jumping, walking or standing on his feet and legs in a normal manner. Dr. Jones estimated that plaintiff is 80% disabled in his left lower extremity, and 50% disabled in his right lower extremity. Plaintiff has suffered severe pain and emotional distress as a result of his injuries, particularly since they have destroyed his hopes of becoming a professional basketball player.

## LIABILITY OF TVA

■ The court must look to the law of Tennessee in determining the liability of defendant TVA in this cause. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Tennessee law provides that an employee of an independent contractor who performs work on the premises is an invitee, and the owner or occupant is required to use reasonable care to provide a safe place for him to work. *Stringer v. Cooper,*

486 S.W.2d 751, 755 (Tenn.App.1972). Where the owner or occupant has actual or constructive knowledge of latent or potential dangers on the premises, he owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor who are without actual or constructive notice of the dangers. *Shell Oil Co. v. Blanks,* 46 Tenn. App. 539, 330 S.W.2d 569, 572 (1959). This duty arises out of the owner's superior knowledge of the dangerous condition of his premises, and he is not liable for injuries sustained from · dangers that are obvious, reasonably apparent or as well known to the invitee as the owner. *Dempster Brothers, Inc. v. Duncan,* 61 Tenn.App. 88, 452 S.W.2d 902, 906 (1960); *Broome v. Parkview, Inc.,* 49 Tenn.App. 725, 359 S.W.2d 566, 568 (1962). An owner or occupant of premises is not required to keep the premises absolutely safe for invitees, and in determining whether proper care has been exercised it is appropriate to consider the nature of the property, the use for which it is intended and the particular circumstances of the case. *Walls v. Lueking,* 46 Tenn. App. 636, 332 S.W.2d 692, 695 (1960).

Plaintiff contends that it was not reasonably apparent that the plexiglas panel through which he fell would not bear his weight, and further that TVA was negligent in its failure to warn Tarbuk or plaintiff of the special danger posed by the drastic reduction in the weight-bearing capacity of the broken panels.

■ The court has serious reservations about accepting the first of plaintiff's contentions. The dangers of walking on a one-quarter inch, transparent plastic surface suspended some eighty-five feet above the ground are apparent. It should have been quite obvious to anyone that the plexiglas skylights were not designed as a walking surface.

■ Even assuming arguendo that it was not reasonably apparent that the plexiglas panel would not bear plaintiff's weight, the court is of the opinion that TVA discharged its duty to warn or protect against the dangerous condition of the skylight.[1] As noted previously, TVA officials had discussed the dangers of the skylights with Mr. Aaron, Tarbuk's supervisor on the job site at Cumberland City. TVA had instructed Aaron that workers having occasion to go up on the skylights should be tied off to a safety line and that they should walk only on the metal ribs. Aaron testified that he knew the plexiglas panels were dangerous and that he had instructed most of his employees that they should walk only on the ribs. Aaron's instructions were that apprentices should not work on the skylights. Unfortunately, plaintiff was not informed of Aaron's instructions, nor was he given instructions of any sort with regard to the appropriate safety precautions to be taken when working on the barrel vaults.

Nonetheless, this court is of the opinion that TVA took reasonable precautions by virtue of its warning to Aaron and its instruction that workers on the skylights should be tied off to a safety line. The impracticality of requiring TVA to be responsible for warning each individual employee of an independent contractor with regard to every hazard on the construction site is obvious. See *Brown v. American Cyanamid & Chemical Corp.,* 372 F.Supp. 311, 316 (S.D.Ga.1973).

Plaintiff cites the case of *Womble v. J. C. Penney Co.,* 431 F.2d 985 (6th Cir. 1970) for the proposition ·that under Tennessee law, circumstances may be such that. notice to an employer of a danger does not constitute notice to an employee. At best, this legal proposition was mere dictum in the *Womble* case, because the trial court had expressly stated:

---

1. The court rejects plaintiff's contention that any duty to warn owed by TVA was non-delegable. Plexiglas skylights, to which access is limited, are not the type of extremely dangerous instrumentality contemplated in *International Harvester v. Sartain,* 32 Tenn.App. 425,

222 S.W.2d 854 (1948). Nor do the facts of this case encompass the concepts of public nuisance which were involved in the case of *McHarge v. M. M. Newcomer & Co.,* 117 Tenn. 595, 100 S.W. 700 (1907).

"The Court does not recall any evidence that plaintiff's boss knew of the dangerous condition in the floor which resulted in the injuries to plaintiff. . . ."
*Womble v. J. C. Penney Co.,* 47 F.R.D. 350, 354 (E.D.Tenn.1969)

This court does recognize that there may be certain circumstances under which the owner of the premises would not discharge his duty by warning the employer; one example of such circumstances would be a case in which it should have been obvious to the owner that the employer would not properly warn his employees. However, the evidence offered at trial did not indicate that TVA should have been aware that Tarbuk would send an inexperienced apprentice up on the skylights without warning him of the dangers and affording him appropriate safety equipment and instructions. Thus, under the circumstances involved in this case, notice to Tarbuk must be considered to have discharged TVA's duty to warn of the dangers.

■ Plaintiff also argues that the warning by TVA did not specifically include the latent defect in the premises, inasmuch as the patched hole in the plexiglas panel was a major factor in reducing the weight-bearing capacity of that panel. Thus, plaintiff insists that the warning given by TVA was inadequate. However, the court is of the opinion that the danger contemplated in the general warning given by TVA to plaintiff's employer was sufficiently related to the danger actually encountered by plaintiff to discharge TVA's duty to warn. Additionally, Mr. Aaron, Tarbuk's supervisor, testified that he had walked the ribs prior to plaintiff's accident and had noticed that several of the panels were broken. He stated several times that he knew the plexiglas was not a safe walking surface, and it would thus follow that Aaron was certainly aware that the broken plexiglas panels would not be a safe walking surface.

The court rejects plaintiff's contention that the plexiglas, in an unbroken condition, was as "safe as any sidewalk to walk upon," due to the inconclusive nature of the proof with regard to the impact loading characteristics of the plexiglas. Given the slick surface of the plexiglas, the danger of a man slipping and falling on it and thus creating an impact loading condition was substantial. Accordingly, the court rejects as specious plaintiff's argument to the effect that there was no necessity that workers be tied off with a safety line while working on the skylights because they were a safe walking surface.

## LIABILITY OF IBG

Plaintiff contends that defendant IBG is liable for his injuries under the theory of strict liability in accordance with the principles enunciated in § 402A of the Restatement of Torts 2d. Plaintiff avers that IBG, as the installer of the barrel vaults, was aware that the panel through which plaintiff fell was broken prior to November 21, 1972, the date of TVA's final acceptance of the skylights.

■ Tennessee courts have adopted the doctrine of strict liability in tort as enunciated in § 402A of the Restatement. *Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966); *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967); *Parker v. Warren,* 503 S.W.2d 938 (Tenn.App.1973).

§ 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

**1058**

As stated by the Supreme Court of Tennessee in *Ford Motor Company v. Lonon, supra,* this doctrine of strict liability

" . . . requires the plaintiff to establish that the product, when it left the hands of the manufacturer or other supplier, was at that time in both a defective *and an unreasonably dangerous* condition." 398 S.W.2d 249 (emphasis added)

Whether or not a product was in a defective and unreasonably. dangerous condition is normally a question of fact for the jury. *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516, 523 (Tenn.1973). However, the instant case was heard without the benefit of a jury and the court must therefore make this factual determination.

At the outset, the court notes that it has some difficulty in accepting plaintiff's premise that the plexiglas panel through which plaintiff fell was actually in the type of defective condition which is contemplated by § 402A when it left the control of IBG. The cause of this difficulty is TVA's admission that it, not IBG, was responsible for the hole in the panel and its assumption of the duty to repair the hole. Although the hole did in fact exist at a time when IBG was in the process of installing the barrel vault skylights and technically in control thereof, there was no evidence which tended to show that the hole was a result of any defect in workmanship or material for which IBG would be held responsible. .Thus, it does not seem fair to hold IBG liable for a defective condition which was caused by the purchaser, TVA, merely because the damage occurred prior to TVA's final technical acceptance of the eight barrel vault skylights. This is particularly true where the purchaser, TVA, accepted the skylights with full knowledge of the broken panels ·and assumed responsibility for repairing them.

■ However, the court need not decide this question, because it did not appear at trial that the plexiglas panel in question was in such a defective condition as to be unreasonably dangerous, considering the totality of the circumstances involved in this case.

As noted previously, access to the roof area where the skylights were located was limited to construction workers who were there to perform specific tasks. It was obvious that the barrel vaults were skylights and were not designed as a walking surface. Thus, the fact that one of the panels would not hold the weight of a man would not make the barrel vaults unreasonably dangerous, considering the fact that no one should have been walking on any of the panels, nor even the metal ribs, without a safety line.

■ Closely related to the question of whether the plexiglas panel through which plaintiff fell was in an unreasonably dangerous condition is the question of whether the product was subjected to an abnormal use. In Tennessee, as elsewhere, abnormal use of a product is generally a defense in strict liability cases. *Ellithorpe v. Ford Motor Co., supra,* at 519. As stated by a noted authority on products liability:

" . . . a plaintiff, to recover in strict liability in tort, must establish that the product proved defective, and the injury occurred when it was used in a foreseeable manner. In other words, foreseeable use is a requirement for a case in strict liability in tort, just as it is in negligence or warranty cases. If the plaintiff can be shown to have used the product in a manner other than its intended use, and particularly if that abnormal use related to the occurrence of the injury, liability should not follow unless the abnormal use was itself foreseeable." Frumer and Friedman, PRODUCTS LIABILITY, § 16A[4][d]

See also Prosser, Handbook of the Law of Torts, Fourth Edition, § 102, pp. 668–669.

■ This court is of the opinion that IBG's product was put to an abnormal use when plaintiff walked on the plexiglas panels. It did not appear from the evidence at trial that it was reasonably foreseeable that anyone would be walking on a thin, clear, sloping, slippery plexiglas panel eighty-five feet above the ground, without first taking the precaution of being tied off to a safety line. The barrel vault skylights were obvi-

ously not intended as a walking surface, and there was no evidence at trial which indicated that IBG should have known that workmen would rely on the plexiglas panels as a walking surface. It was not suggested that the plexiglas panels, even the broken ones, were unsafe for the purpose for which they were intended, i. e., as skylights. It was the abnormal, unintended use of the plexiglas panels as a walking surface which posed the hazard to plaintiff, and defendant IBG cannot be held responsible for this unanticipated use of the skylights.[2]

 Plaintiff also contends that defendants violated their duty to use care with respect to the construction of the skylights in that the barrel vaults as constructed did not comply with the specific standards set forth in T.C.A. § 53–2528. Plaintiff concedes that there is some question as to whether Tennessee Code provisions may be legally enforced against TVA, a federal agency. *Mayo v. United States,* 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943). However, plaintiff contends that regardless of whether the Tennessee Code standards are enforceable on a TVA project, they represent a standard of care established by legislative fiat and are therefore applicable to a determination of questions of negligence and strict liability under Tennessee law.

An examination of the provisions of T.C.A. § 53–2528 reveals that it contemplates skylights made of glass. Plexiglas is a material of a different consistency than glass and it possesses certain properties distinguishable from those of plain glass. Thus, it is dubious that the statute referred to would be applicable to the barrel vault skylights at issue. Additionally, plaintiff presented no evidence which tended to show that the placement of screens over or under the barrel vaults would have succeeded in preventing plaintiff's fall.

In conclusion, this court finds that neither defendant TVA or defendant IBG is liable under Tennessee law for the injuries sustained by plaintiff in this tragic accident. The court was much impressed with plaintiff's courage in attempting to overcome his injuries and is certainly sympathetic to the plight of someone so severely injured. However, the court cannot allow its sympathy and admiration for plaintiff to affect its judgment concerning the legal liability of the parties involved. It was apparent to this court that plaintiff's injuries were caused by the grossly negligent failure of his employer, Tarbuk, in allowing its employees to climb upon the skylights without proper instructions and safety equipment.

For the foregoing reasons, the complaint of Howard Jackson must be dismissed. An appropriate order will be entered.

2. See *McCready v. United Iron & Steel Co.,* 272 F.2d 700 (10th Cir. 1959), wherein the court held that workmen using cross-bars of window casements as hand-holds and footrests subjected the window casements to an abnormal use and accordingly denied recovery. Although the *McCready* case was based on negligence, the concept of abnormal use therein is equally applicable to strict liability.