**Bobby FERGUSON and Sharon Ferguson, Plaintiffs–Appellants,**

v.

**CHEMETALS INCORPORATED, Defendant–Appellee.**

No. 00–5009.

United States Court of Appeals, Sixth Circuit.

Aug. 21, 2001.

Before SILER and GILMAN, Circuit Judges; and DUGGAN,* District Judge.

DUGGAN, District Judge.

This is a personal injury suit in which Plaintiffs seek damages for injuries sustained by Bobby Ferguson when an allegedly defective pipe reducer that he was working near burst, spraying him with hot liquid. Plaintiffs filed suit against Chemetals Incorporated, the owner of the premises where Ferguson, the employee of an independent contractor, was working at the time of the incident. The district court granted summary judgment in favor of Chemetals and Plaintiffs filed a timely appeal. For the reasons stated below, we REVERSE AND REMAND.

*Background*

At the time of the June 7, 1995, incident at issue in this case, Plaintiff Bobby Ferguson worked for Arnold's Fabricating and Machine Shop ("Arnold's"), a metal fabricator and machine shop that performs field work, plant maintenance, and project work. On the date in question, Ferguson was installing an overhead pipe at Chemetals' facility. Arnold's contracted work with Chemetals on a regular basis, maintained a trailer at Chemetals, and stationed its own supervisor at Chemetals. While Ferguson was installing the over-

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

head pipe the reducer in a nearby pipe exploded, spraying hot liquid on him.

On April 17, 1996, Plaintiffs filed suit against Chemetals, asserting that Chemetals had negligently failed to provide Ferguson with a reasonably safe place to work, instruct Ferguson how to safely perform his job duties, warn Ferguson of the dangers related to working in Chemetals' plant, and provide pipes of sufficient strength and durability to carry the hazardous chemicals.

Chemetals filed a motion for summary judgment. In response to Chemetals' motion, Plaintiff submitted the affidavit of its expert opining that the reducer that burst was defective. This was the first time Plaintiffs asserted that the reducer at issue was defective. Consistent with their expert's affidavit, on April 9, 1997, Plaintiffs filed an amended complaint against Chemetals, adding claims that Chemetals was negligent in failing to warn Ferguson of the allegedly defective reducers and failing to remove the allegedly defective reducers from the existing pipelines.

By agreement of the parties, Chemetals' motion for summary judgment was referred to the magistrate judge for decision. On April 13, 1999, the magistrate judge issued a Memorandum Opinion granting Chemetals' motion for summary judgment and dismissing Plaintiffs' claims with prejudice.

### Discussion

We review *de novo* the magistrate judge's grant of summary judgment. *See Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 462 (6th Cir.1998) (citing *Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir.1992)). Summary judgment is proper only if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See id.* (citing *City Mgmt. Corp. v. U.S.*

*Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994)). We consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *See id.* To survive summary judgment, the non-movant must set forth more than a mere scintilla of evidence in support of its position; there must be sufficient evidence on which a jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In granting Chemetals' motion for summary judgment, the magistrate judge found that under Tennessee law, Chemetals had a duty to Ferguson to either warn of, or remove, any latent defects or dangers on its premises of which it had notice, and that the allegedly defective reducer constituted a latent danger of which Chemetals had notice. The magistrate judge, however, also found that Ferguson's employer, Arnold's, had equal or superior knowledge of the latent danger, *i.e.*, the presence of the defective reducers, and that such knowledge was imputed to Ferguson under Tennessee law. According to the magistrate judge, Ferguson's imputed knowledge of the dangerous condition, as a *matter of law*, relieved Chemetals of its duty to warn.

We find that the magistrate judge erred in granting summary judgment to Chemetals. First, we find that genuine issues of material fact exist as to whether Arnold's possessed equal or superior knowledge regarding the allegedly defective reducers. Second, we find that under Tennessee's comparative fault law, Ferguson's imputed knowledge of the latent danger does not act as a complete bar to recovery as a matter of law.

*1. A Genuine Issue of Material Fact Exists Regarding Arnold's Knowledge of the Latent Defect*

■ It is undisputed that prior to the incident in question, Chemetals had expe-

rienced problems with the "black" reducers failing and had knowledge that such failures could cause injury to its employees.[1] In 1994, Chemetals' Purchasing Manager, B.R. Buckner, wrote a letter to Fibercast, the reducer manufacturer, stating "we have recently had [numerous] failures of Fibercast Fig. 34F reducers, *one resulting in an employee injury*." (J.A. 88) (emphasis added). Furthermore, due to the failure rate of the black reducers and his corresponding concern for the safety of Chemetals' employees, in early 1995, Joseph Nash, Chemetals' Maintenance and Engineering Manager, stopped purchasing black reducers. (*Id.* at 773). Nash also asked his employees to replace the black reducers that had been previously installed at Chemetals' facility. (J.A. 779). The task of replacing the black reducers was largely performed by Chemetals' employees, not Arnold's employees. (*Id.* 779).

Viewing this evidence in a light most favorable to Plaintiffs, as we must do on a motion for summary judgment, clearly establishes that Chemetals knew that the black reducers were prone to failure and posed a "safety concern." The magistrate judge therefore correctly concluded that Chemetals' had a duty to either remove or warn of the allegedly defective reducers. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn.1998) (stating that premises owner's duty to exercise reasonable care includes "the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware with reasonable diligence").

The magistrate judge, however, also found that Arnold's on-site supervisor, Phillip Breeden, possessed equal or superior knowledge to that of Chemetals, and that such knowledge was imputed to Ferguson, thereby relieving Chemetals of its duty to warn. Although the magistrate judge states several times that the "latent dangers were communicated" to Breeden, we find no evidence in the record to support this statement. The only communication regarding the reducers in the record before us is Nash's statement that he "told a couple of foremen" that the black reducers needed to be replaced. (J.A. 781). Breeden testified that Chemetals never informed him of the potential safety concerns surrounding the reducers, or that the black reducers were not to be used anymore. (*Id.* 811). We therefore find *Jackson v. Tennessee Valley Authority*, 413 F.Supp. 1050, 1056 (M.D.Tenn.1976), relied upon by Chemetals, to be distinguishable from this case as it was undisputed in *Jackson* that the defendant had discussed the dangerous condition with the plaintiff's employer.

Furthermore, to the extent that the magistrate judge's conclusion was based upon Breeden's independent knowledge of the reducers, we find such conclusion to be erroneous. Breeden testified that he had some knowledge of the problems associated with the black reducers and that "[h]e had seen a couple of them that had cracked and they didn't bust; they just had a little crack in them." (J.A. 609). Breeden also stated "that it [s]eems like the black [reducer] is worse." (*Id.* 611). According to Breeden, although Arnold's had replaced some of the black reducers, they only did so if the black reducer cracked. As Breeden stated: "I didn't say we was going around replacing them. I said we'd change them out right there because they were cracked and we put some green ones in because that's what we had." (*Id.* 618).

---

1. The parties refer to the allegedly defective reducers as the "black" reducers, and the allegedly preferable reducers as the "green" reducers.

The magistrate judge acknowledged that Arnold's was not systematically replacing every black reducer as if some emergent situation existed; that Breeden would use either a green reducer or a black reducer depending upon availability; and that if he did not have a green reducer and the black reducer looked good, he would use the black one.

A jury could conclude from this evidence that although Arnold's had knowledge that some of the black reducers had failed, unlike Chemetals, Arnold's was not aware that the black reducers posed a "safety concern" for its employees. We are satisfied that genuine issues of material fact exist as to the extent of Arnold's knowledge regarding the allegedly defective black reducers, and whether Arnold's knowledge was equal or superior to Chemetals' knowledge. We therefore conclude that the magistrate judge erred in granting summary judgment in favor of Chemetals.

■ In remending this case to the district court, we find unpersuasive Chemetals' reliance on the argument that "[n]o duty is owed to an independent contractor's employees when they are injured while engaging in work they were contracted to perform." Under Tennessee law, a premises owner is relieved of its duty "when the contractor is injured while making the specific repairs called for in the contract." *Blair v. Campbell*, 924 S.W.2d 75, 75 (1996). The magistrate judge specifically found that Ferguson was not sent to repair the reducer that failed and caused his injury.

■ We also reject Chemetals' argument that Plaintiffs' claims are barred under the doctrine of "primary implied assumption of the risk." Primary implied assumption of the risk arises where "a plaintiff assumes a known risk that is inherent in a particular activity, such as watching a baseball game from an unscreened seat." *Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn.1998). Ferguson was not working on the allegedly defective reducer; nor is there any evidence that he knew that the black reducers posed a potential safety concern. Ferguson was installing a new pipeline, not an existing pipeline carrying dangerously hot material. Furthermore, there is no evidence that reducer failures are an "inherent" risk of Ferguson's occupation. Ferguson cannot be said to have knowingly assumed a risk that he had no knowledge of, and that was not inherent to his line of work. In our opinion, the facts of this case would, at best, involve the doctrine of "secondary implied assumption of risk," which Defendant acknowledges no longer precludes recovery, but only serves to reduce damages under the comparative fault analysis. (Appellee's Br. at 25). We therefore reverse the decision of the magistrate judge.

*2. Ferguson's Imputed Knowledge Regarding the Latent Danger Does Not Preclude Recovery as a Matter of Law*

■ We also find that the magistrate judge erred in concluding that Ferguson's imputed knowledge regarding the allegedly defective reducers relieved Chemetals of its duty as a matter of law. Under Tennessee law, the employee of an independent contractor enjoys the status of an invitee while performing work on the premises of the owner-contractee. *Dempster Bros. Inc. v. Duncan*, 61 Tenn.App. 88, 452 S.W.2d 902, 906 (1969). As a result of the employee's status as an invitee, the premises owner owes the employee "the duty to exercise reasonable care to see that an employee has a reasonably safe place to work." *Id.* This duty, based upon premises liability, is limited to a duty to remove, or warn of, latent dangers of which the premises owner has actual or constructive knowledge. *Ellis v. Chase Comm'n, Inc.*, 63 F.3d 473, 476 (6th Cir.

1995); *see also Blair v. Campbell,* 924 S.W.2d 75, 76 (Tenn.1996); *Dempster,* 452 S.W.2d at 906. This duty to warn is not unique to the employees of independent contractors; this is the same duty that premises owners owe to all invitees. *See Dempster,* 452 S.W.2d at 906.

The premises owner's duty to remove or warn of latent dangers traditionally arose out of the premises owner's "superior knowledge" of the dangerous condition and therefore, the premises owner had no duty to warn of "dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner." *Dempster,* 452 S.W.2d at 906; *see also Ellis,* 63 F.3d at 476; *Jackson,* 413 F.Supp. at 1055–56. Hence, the "open and obvious" doctrine, under which the premises owner had no liability for dangers that were "obvious, reasonably apparent, or as well known to the invitee ... as to the owner." *Coln,* 966 S.W.2d at 40 (internal quotations omitted).

In *Coln,* the Tennessee Supreme Court limited the "open and obvious" doctrine of premises liability, holding that "an open and obvious danger does not automatically result in a finding of no duty and therefore no landowner liability." *Id.* at 37. According to the Tennessee Supreme Court, after its adoption of comparative fault in 1992, a premises owner's duty can no longer be analyzed in terms of whether the danger was obvious or known to the invitee. *Id.* at 41–42. Rather, a premises owner's duty must be analyzed "with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id.* at 42. As explained by the Tennessee Supreme Court, "if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and ob-

vious,' outweighed the burden on the defendant to engage in alternative conduct to avoid harm, there is a duty to act with reasonable care." *Id.* at 43.

Because a premises owner's duty to the employee of an independent contractor stems from the traditional duties owed to all invitees, the Tennessee Supreme Court's decision in *Coln* is equally applicable in this case.[2] *See Rice,* 979 S.W.2d at 308–09. Therefore, even if Chemetals had warned Arnold's of the allegedly defective reducer or even if Ferguson had knowledge of the allegedly defective reducers, after *Coln,* such knowledge does not necessarily alleviate Chemetals' duty, or bar Ferguson from recovering, as a matter of law. Such knowledge on the part of Ferguson, whether actual or imputed, is simply one factor the jury may consider in determining whether Chemetals should have engaged in alternative conduct. As the Tennessee Supreme Court stated in *Coln,* "[i]f the risk of harm remains unreasonable despite ... knowledge of it by the invitee, then the circumstances may be such that the [defendant] is required to undertake reasonable precautions [and] the issue then ... is for the jury to decide. *Coln,* 966 S.W.2d at 41 (quoting *Bertrand v. Alan Ford, Inc.,* 449 Mich. 606, 537 N.W.2d 185, 187 (1995)).

In sum, we find, under the facts of this case, that Chemetals had a duty to act with reasonable care to either warn Plaintiff of the danger, or eliminate the danger. Whether Chemetals discharged its duty to exercise reasonable care is for the jury to decide.

### Conclusion

For the reasons stated above, we RE-VERSE AND REMAND to the district

---

**2.** We recognize that although *Coln* was decided well before the parties filed their "renewed" pleadings in the district court, neither

party raised this issue before the magistrate judge.

court for further proceedings consistent with this Opinion.