# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 10, 2014 Session

## DEBORAH R. SMITH v. JOHN P. STANLEY, ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 2011-0066-III      Rex Henry Ogle, Judge**

_____

**No. E2013-00886-COA-R3-CV-FILED-MAY 12, 2014**

_____

Deborah R. Smith ("Plaintiff") sued John P. Stanley and Dinah Stanley ("Defendants") with regard to injuries Plaintiff suffered when she fell down stairs while visiting a cabin ("the Cabin") owned by Defendants. Defendants filed a motion for summary judgment. After a hearing, the Circuit Court for Sevier County ("the Trial Court") granted Defendants summary judgment after finding and holding that Defendants owed no duty to Plaintiff. Plaintiff appeals the grant of summary judgment. We find and hold, as did the Trial Court, that there are no genuine disputed issues of material fact, and that Defendants have shown that Plaintiff cannot establish an essential element of her claim, specifically duty. We, therefore, affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Richard E. Collins, Knoxville, Tennessee, for the appellant, Deborah R. Smith.

Dallas T. Reynolds, III, Knoxville, Tennessee, for the appellees, John P. Stanley and Dinah Stanley.

# OPINION

## Background

On February 11, 2010 Plaintiff visited the Cabin with Dan Stanley and Natalie Smith. Plaintiff is Defendants' niece, Dan Stanley is Defendants' son, and Natalie Smith is Plaintiff's sister. The Defendants were not present at the Cabin. This was Plaintiff's first visit to the Cabin, and she did not know whether the Cabin contained stairs or not.

It was nighttime and dark when the three arrived at the Cabin. Dan Stanley exited the vehicle, took some groceries, and went to open the Cabin's front door. The Cabin had an electronic lock, and Mr. Stanley punched in the numbers and opened the door. Mr. Stanley held the Cabin door open for Plaintiff to enter the Cabin, and Plaintiff entered the Cabin. It is undisputed that Plaintiff was the first of the three to walk through the front door of the Cabin during that visit.

It is undisputed that there were no lights on before Plaintiff entered the Cabin, which was described as "completely black." There were a total of three different sets of light switches to Plaintiff's left on the path she took from the front door to the stairway where she fell. Plaintiff did not turn on any lights between the time she entered the Cabin and the time she fell. Plaintiff did not ask Dan Stanley or Natalie Smith to turn on any lights before she entered the Cabin, nor did she ask where a light switch was located.

It is disputed exactly how many steps Plaintiff took into the Cabin before she fell down the stairs, but it is undisputed that Plaintiff took at least one step and probably several steps into the Cabin. Plaintiff then stepped backward and fell down a staircase. Plaintiff was knocked unconscious from the fall, and suffered multiple injuries.

Plaintiff filed this lawsuit. Defendants filed a motion for summary judgment asserting that they could negate an essential element of Plaintiff's claim by showing that Defendants did not owe a duty to Plaintiff. Specifically, Defendants asserted that they did not owe a duty to Plaintiff to warn of the existence or location of the stairway and that it was not reasonably foreseeable that Plaintiff would enter an unfamiliar area in the dark without turning on any lights. After a hearing, the Trial Court granted Defendants summary judgment after finding and holding that pursuant to our Supreme Court's holding in *Eaton v. McClain*, 891 S.W.2d 587 (Tenn. 1994), Defendants did not owe a duty to Plaintiff. Plaintiff appeals the grant of summary judgment to this Court.

## Discussion

The dispositive issue in this case is whether the Trial Court erred in granting Defendants summary judgment. Because this case was filed prior to July 1, 2011, we apply the summary judgment standard as set out by our Supreme Court as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this

-3-

Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Plaintiff argues in her brief on appeal that the Trial Court erred in finding *Eaton v. McLain* dispositive of her case. *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994). Plaintiff states in her brief: "Eaton [sic] did nothing to change the principle that '[f]orseeability is the test of negligence.' . . . On the particular facts of *Eaton*, that test was not met." Plaintiff states that "[t]he issue for the Court is whether the risk was foreseeable." Plaintiff further states: "By not distinguishing the facts of *Eaton* from the record here, and by treating *Eaton* as if it creates a presumption against any duty in cases involving stairs, the trial court committed reversible error."

We disagree that what the Trial Court did was treat *Eaton* as if it created a presumption. What the Trial Court did was find that there were no facts in this case which would distinguish it from *Eaton*. What Plaintiff actually is arguing is that the Trial Court should have distinguished this case from *Eaton*, and found that the risk in this case was foreseeable.

The Supreme Court set forth the following facts in *Eaton*:

On March 23, 1991, Pauline Eaton travelled [sic] to the home of Tammy and James McLain - her daughter and son-in-law - to spend the night. Ms. Eaton arrived at the McLains' about 6:00 p.m., and she and her daughter and son-in-law remained in the kitchen/den area of the home watching television until approximately 9:30 or 10:00. At that time, Ms. Eaton decided to go to bed. Because the McLains' daughter Melanie was spending the night at a friend's house, Ms. Eaton was advised by her daughter to sleep in Melanie's bedroom. This bedroom is located along a long, narrow hallway that connects the kitchen/den area on one end of the house to the master bedroom on the other end. Directly across the hall from Melanie's bedroom are two virtually identical doors that are adjacent to one another: the door to the right opens into a bathroom; and the door to the left opens onto a flight of stairs leading down to the basement. At the time of Ms. Eaton's stay, the lock on the basement door was inoperable.

-4-

The McLains decided to go to bed about 11:00. While en route down the hallway to the master bedroom, Tammy McLain closed both the door to the bathroom and the door leading to the basement stairwell; she also switched off the hallway and bathroom lights.

Ms. Eaton awoke about 5:00 the next morning needing to go to the bathroom. Although it was very dark when she awoke, Ms. Eaton did not turn on either the light in Melanie's bedroom or the light in the hallway as she attempted to make her way to the bathroom. Instead, she proceeded across the hall and opened the basement door, believing it to be the bathroom door, and stepped inside. Ms. Eaton fell down the stairs and sustained injuries to her elbow and back.

*Eaton*, 891 S.W.2d at 588-89.

In *Eaton*, the trial court entered a judgment approving a jury verdict which apportioned 40% of the fault to the plaintiff, and 60% to the homeowners. This Court reversed the judgment and dismissed the case. The Supreme Court ultimately affirmed the decision of this Court after concluding that under the facts of that case, the homeowners did not owe the plaintiff a duty. The Court stated:

This Court has recently enunciated the proper analysis to be used in determining the scope of the duty of care in a negligence case. In *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992), we stated:

The term reasonable care must be given meaning in relation to the circumstances. [citation omitted]. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. [citation omitted]. The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. 'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that

some action within the [defendant's] power more probably than not would have prevented the injury.' [citation omitted].

* * *

The pertinent question is whether there was any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused the plaintiff's injuries.

*Doe*, 845 S.W.2d at 178.

As indicated in *Doe*, the question of whether the McLains' general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which Ms. Eaton was exposed. In other words, the issue is whether Ms. Eaton has made "any showing from which it can be said that the *defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries.*" *Id*. (emphasis added).

We are of the opinion that no such showing has been made. In order for the McLains to be charged with the duty to leave on the light in the hall and to lock the basement door, they must have been able to reasonably foresee that Ms. Eaton would get out of bed in total darkness, walk across the hall, and step into the basement stairwell, all without turning on any lighting whatsoever. While our holding would likely be different if no lighting had been provided or if it had been inoperative, Ms. Eaton's failure to turn on any lights, coupled with her willingness to open the door and step into an unfamiliar area, is such a radical departure from reasonable conduct under the circumstances that the McLains could not have reasonably foreseen that conduct and its consequences. To hold otherwise would necessarily cast the premises owner in the role of an absolute insurer of the social guest's safety, which is not contemplated by our negligence law.

* * *

Moreover, we hold that the McLains did not have a duty to warn Ms. Eaton of the location of the stairs. Although Tennessee law provides that premises owners owe invitees the duty to warn of latent or hidden dangers, this duty does not arise if the danger is open and obvious. *Jackson v. Tennessee*

*Valley Authority*, 413 F. Supp. 1050, 1056 (M.D. Tenn. 1976); *Odum v. Haynes*, 494 S.W.2d 795, 800 (Tenn. App. 1972). Because stairs descending from a hallway to a basement are a common feature of many homes, *see Alcorn v. Stepzinski*, 185 Ill. App.3d 1, 132 Ill. Dec. 901, 904, 540 N.E.2d 823, 826 (1989) and *Duckers v. Lynch*, 204 Kan. 649, 465 P.2d 945, 950 (1970), they are not inherently dangerous.

*Eaton*, 891 S.W.2d at 594-95 (footnote and partial citations omitted).

Plaintiff's complaint alleges that Defendants were negligent for failing to provide adequate lighting and for failing to warn of or correct a dangerous or hazardous condition. As our Supreme Court instructed in *Eaton*, the issue of whether Defendants':

general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which [Plaintiff] was exposed. In other words, the issue is whether [Plaintiff] has made "any showing from which it can be said that the *defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries.*"

*Id*. at 594.

In her brief on appeal, Plaintiff cites to several cases from other states. These particular cases were cited in *Eaton* and, thus, were considered by our Supreme Court. Because we have Tennessee case law that addresses the pertinent issue, and given that our Supreme Court considered these specific cases when it ruled in *Eaton*, these cases from other states are neither controlling nor persuasive.

Defendants have shown that Plaintiff cannot establish an essential element of her claim, specifically duty. As our Supreme Court pointed out in *Eaton*, stairs leading from a hallway to a basement are a common feature in a home, are not inherently dangerous, and do not give rise to a duty to warn without some further showing of latent or hidden danger. Plaintiff has pointed to no facts which would tend to show that the stairs she fell down constituted a latent or hidden danger. Thus, Defendants had no duty to warn Plaintiff of the existence of the stairs.

Turning to Plaintiff's allegation of negligence due to failure to provide adequate lighting, we note that in order to find that Defendants had a duty it must be shown that it was reasonably foreseeable that Plaintiff would enter the "completely black" Cabin with which she was unfamiliar, then continue to move inside without turning on lights or

asking to have lights turned on, and then take a step backwards. The undisputed evidence shows that Plaintiff made no attempt to turn on any lights when she entered the Cabin. The undisputed evidence also shows that Plaintiff never asked to have lights turned on when she entered the Cabin. The undisputed evidence shows that lights were available and could have been turned on, but simply were not. Similar to the situation in *Eaton*, Plaintiff's "failure to turn on any lights, coupled with her willingness to . . . step into an unfamiliar area, is such a radical departure from reasonable conduct under the circumstances that the [Defendants] could not have reasonably foreseen that conduct and its consequences." *Id*.

In her brief on appeal in support of her argument that this case should be distinguished from *Eaton*, Plaintiff discusses two other cases involving falls down stairs in which this Court distinguished the facts from the facts of *Eaton*. The first of these two cases is *Daniels v. Davis*, No. 01A01-9702-CV-00068, 1997 Tenn. App. LEXIS 624 (Tenn. Ct. App. Sept. 17, 1997), *no appl. perm. appeal filed*. In *Daniels* the plaintiff, who was the defendant's mother, previously had lived in the defendant's house where the accident happened. *Id*. at \*2. The house had "an improved basement with an outside exit that was connected to the first floor of the house by a steep set of stairs," which were used "frequently to enter and leave the house." *Id*. The defendant had installed a handrail on the upper portion of the stairs when he moved into the house. *Id*. After living in the house for some period of time, plaintiff moved out of the house. *Id*. After plaintiff moved, defendant undertook some home improvement projects including rebuilding the stairs. *Id*. The improvement project for the stairs included "changing the pitch of the stairs and adding four additional steps, installing paneling and trim in the stairwell, replacing the carpet on the stairs, and building a bookcase at the top of the stairs." *Id*. at \*\*2-3. The defendant removed the handrail during the renovations. *Id*. at \*3. During a visit to the defendant's house, the plaintiff "lost her footing as she descended the stairs," and "reached instinctively for the handrail that had been installed on the left of the stairs, [which] unbeknownst to her," had been removed. *Id*.

This Court found the facts in *Daniels* to be distinguishable from those in *Eaton* and stated:

> The stairs in this case were used frequently to enter and leave the house, even while they were being reconstructed. Accordingly, [defendant] should have foreseen that the persons using the stairs might use the handrail to steady themselves. Since [defendant] had a duty to maintain these stairs in a reasonably safe condition, he had a duty either to provide a suitable substitute for the handrail or to warn persons using the stairs that the handrail had been removed. . . . [Defendant] negligently failed to maintain the stairs in a reasonably safe condition while he was rebuilding them . . . .

*Id*. at *8. In *Daniels* this Court also noted that the plaintiff's case was "razor thin." *Id*. at *9.

In *Daniels* this Court found that the probability of an occurrence such as the one which caused the plaintiff's injuries was reasonably foreseeable. *Id*. at *8. In *Daniels* it was shown that the stairs were not maintained in a reasonably safe condition while they were being rebuilt. *Id*. Thus, the fact that the stairs were under construction and the fact that the previously existing handrail had been removed were facts critical to the analysis. The plaintiff in *Daniels* made a showing that the stairs were dangerous due to construction and the removal of the previously existing handrail with which the plaintiff was familiar and, thus, were not maintained in a reasonably safe condition. *Id*. The case now before us is distinguishable from *Daniels* because there are no allegations in the case now before us that the stairs were not maintained in a reasonably safe condition as was the case in *Daniels*.

The second of the two cases relied upon by Plaintiff in which this Court dealt with a fall down stairs is *Salyer v. McCurry*, No. E2008-01017-COA-R3-CV, 2009 Tenn App. LEXIS 208 (Tenn. Ct. App. Jan. 29, 2009), *no appl. perm. appeal filed*. In *Salyer*, a defendant real estate agent was showing a house to the plaintiff, a potential purchaser. *Id*. at *2. The defendant real estate agent never had been in that particular house prior to the day when she visited it with plaintiff. *Id*. at *6. While in the house, the plaintiff encountered a closed door. *Id*. at 8. She asked the defendant real estate agent what was behind the door. *Id*. The defendant real estate agent, who was at that time reviewing some paperwork, responded that it was a bedroom and told plaintiff to go on in. *Id*. The plaintiff opened the door, took one step into the pitch black, and fell down a staircase leading to a basement. *Id*.

In *Salyer* we discussed *Eaton* and then stated:

> The present case, unlike *Eaton*, does not involve someone getting up before dawn, failing to turn on the lights, and then stepping into the darkness. If Plaintiff had simply opened the door and taken that first fateful step entirely on her own volition, then *Eaton* likely would require summary judgment against Plaintiff. The facts in the present case, however, are markedly different from *Eaton*. Here, Plaintiff took an affirmative step toward her own protection when she specifically asked [the real estate agent] what was behind the door. [The real estate agent] told Plaintiff that a bedroom was behind the door and to "go on in." Relying on the information and direction provided to her by [the real estate agent], Plaintiff opened the door and stepped into the darkness. Had [the real estate agent] conveyed accurate information, then presumably the accident never would have happened. We believe that it was foreseeable from [the real estate agent's] perspective that when she told

-9-

Plaintiff that there was a bedroom behind the door and to "go on in," that Plaintiff would do exactly that. Plaintiff at this summary judgment stage has made a "showing from which it can be said that the [D]efendants reasonably knew or should have known of the probability of an occurrence such as the one that caused [her] injuries." [*Eaton*, 891 S.W.2d] at 594. Thus, unlike *Eaton*, there are facts here which raise a dispute as to whether [the real estate agent] was negligent and, if so, how much.

*Id.* at **19-20 (footnote omitted).

Importantly, *Salyer* provides no support for Plaintiff's argument because *Salyer* contains a critical factual distinction which differentiates it from the case now before us. In *Salyer* the trial court granted the homeowner summary judgment and this grant of summary judgment was not appealed. *Id*. at *5. The only issue before this Court in *Salyer* concerned the grant of summary judgment to the defendant real estate agent and the real estate agent's employer, both of whom were named defendants in the suit due to the alleged negligence of the real estate agent for telling the plaintiff that the room was a bedroom when it was not and then telling the plaintiff to go on in. *Id*. at **5-8. The result this Court reached in *Salyer* was that we could not conclude at the summary judgment stage that "the only reasonable conclusion that could be drawn from the undisputed material facts is that Plaintiff's negligence was equal to or greater than [the defendant real estate agent's]." *Id*. at **22-23. *Salyer* did not address the question of duty owed by a premises owner and, as such, offers no support for Plaintiff's argument.

Plaintiff also cites *Norfleet v. Pulte Homes Tennessee Ltd. P'ship* for the proposition that "[t]here are circumstances in which stairs or steps may constitute dangerous conditions that give rise to a duty to warn." *Norfleet v. Pulte Homes Tennessee Ltd. P'ship*, No. M2011-01362-COA-R3-CV, 2011 Tenn. App. LEXIS 609, at *16 (Tenn. Ct. App. Nov. 9, 2011), *no appl. perm. appeal filed*. The undisputed material facts in the case now before us, however, show no circumstances which might cause the stairs in the Cabin to have constituted a dangerous condition, which would have given rise to a duty to warn.

We, as did the Trial Court, find and hold that this case cannot be distinguished in any material way from *Eaton*, and, therefore, *Eaton* controls. Applying *Eaton*, Defendants made a showing that the probability of an occurrence such as the one which caused Plaintiff's injuries was not reasonably foreseeable and, thus, Defendants negated an essential element of Plaintiff's claim, specifically duty. We find no error in the Trial Court's grant of summary judgment to Defendants. We, therefore, affirm the Trial Court's March 7, 2013 order.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Deborah R. Smith, and her surety.

_____
D. MICHAEL SWINEY, JUDGE